PATRICIA L. GLASER - State Bar No. 55668
pglaser@glaserweil.com
G.JILL BASINGER - State Bar No. 195739
jbasinger@glaserweil.com
GLASER WEIL FINK HOWARD
    AVCHEN & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone:  (310) 553-3000
Facsimile:   (310) 556-2920

CARRIE A. MCQUAID - State Bar No. 254066
MGA ENTERTAINMENT, INC.
16380 Roscoe Blvd, Suite 102
Van Nuys, CA 91406
Telephone: (818) 894-2525
Fax: (818) 895-0771

Attorneys for Defendant and Counterclaimant
MGA Entertainment, Inc.

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIACOM INTERNATIONAL INC., a Delaware corporation,<br><br>                    Plaintiff,<br><br>v.<br><br>MGA ENTERTAINMENT, INC., a California corporation,<br><br>                    Defendant.<br>_____<br><br>MGA ENTERTAINMENT, INC., a California corporation,<br><br>                    Counterclaimant,<br><br>v.<br><br>VIACOM INTERNATIONAL INC., a Delaware corporation; DOES 1-10, inclusive,<br><br>                    Counterdefendants. | CASE NO.: 2:15-cv-09621-R (Ex)<br><br>Hon. Manuel L. Real<br><br>**DEFENDANT MGA ENTERTAINMENT, INC.'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT; COUNTERCLAIM**<br><br>**DEMAND FOR JURY TRIAL** |

1130025

Comes now Defendant MGA Entertainment, Inc. ("Defendant" or "MGA") answers the allegations of the First Amended Complaint ("FAC") of Plaintiff Viacom International Inc. ("Plaintiff") as follows:

## INTRODUCTION

1.     Defendant denies the allegation in Paragraph 1 of the FAC.

2.     Defendant admits this is a breach of contract action.  Defendant denies the remaining allegations in Paragraph 2 of the FAC.

3.     Defendant admits MGA and Viacom are parties to a co-finance agreement relating to a television series based on MGA's Lalaloopsy brand of dolls. Defendant denies the remaining allegations in Paragraph 3 of the FAC.

4.     Defendant admits Beacon Media is an agent of MGA.  As to the remainder of the allegations, Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 4 of the FAC, and on that basis, Defendant denies the remaining allegations in their entirety.

5.     Defendant admits Haworth Marketing + Media is an agent of MGA.  As to the remainder of the allegations, Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 5 of the FAC, and on that basis, Defendant denies the remaining allegations in their entirety.

6.     Defendant admits MGA and Viacom International Media Networks, a division of Viacom International, Inc., are parties to a side letter agreement regarding international advertising commitment dated May 16, 2014.  Defendant denies the remaining allegations in Paragraph 6 of the FAC.

7.     Defendant denies each and every allegation in Paragraph 7 of the FAC..

## JURISDICTION AND VENUE

8.     The allegations set forth in Paragraph 8 of the FAC contain legal conclusions with respect to which Defendant can neither admit nor deny.  To the extent Paragraph 8 of the FAC is construed as containing any factual allegations, Defendant lacks sufficient information to form a belief as to the truth or falsity of the

1

Glaser Weil

1130025

allegations in Paragraph 8 of the FAC and, accordingly, Defendant denies those allegations in their entirety.

9.      The allegations set forth in Paragraph 9 of the FAC contain legal conclusions with respect to which Defendant can neither admit nor deny.  To the extent Paragraph 9 of the FAC is construed as containing any factual allegations, Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations in Paragraph 9 of the FAC and, accordingly, Defendant denies those allegations in their entirety.

10.     Defendant avers that the co-finance agreement speaks for itself. Defendant lacks sufficient information to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 10 of the FAC, and on that basis, Defendant denies the remaining allegations.

## PARTIES

11.     Defendant lacks information or belief sufficient to answer the allegations in Paragraph 11 of the FAC, and basing its denial on this ground, denies, both generally and specifically, each and every allegation thereof.

12.     Defendant admits the allegation in Paragraph 12 of the FAC.

## BACKGROUND

13.     Defendant admits Viacom and MGA executed a Series Co-Financing Agreement, dated October 9, 2012 ("Co-Finance Agreement").  Defendant avers that the Co-Finance Agreement speaks for itself.  Defendant lacks sufficient information to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 13 of the FAC, and on that basis, Defendant denies the remaining allegations therein.

14.     Defendant avers that the Co-Finance Agreement speaks for itself. Defendant lacks sufficient information to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 14 of the FAC, and on that basis, Defendant denies the remaining allegations therein.

ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIM

1130025

15.     Defendant avers that the Co-Finance Agreement speaks for itself. Defendant lacks sufficient information to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 15 of the FAC, and on that basis, Defendant denies the remaining allegations therein.

16.     Defendant admits that Viacom paid $5.2 million for production of 52 episodes of the Lalaloopsy TV series. Defendant further admits that Lalaloopsy series was launched on the main Nickelodeon channel in March of 2013. Defendant denies the remaining allegations in Paragraph 16 of the FAC.

17.     Defendant denies each and every allegation in Paragraph 17 of the FAC.

18.     Defendant admits it paid Viacom $500,000 on November 23, 2015. Defendant denies the remaining allegations in Paragraph 18 of the FAC.

19.     Defendant admits Beacon is an agent of MGA. Defendant lacks sufficient information to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 19 of the FAC, and on that basis, Defendant denies the remaining allegations.

20.     Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 20 of the FAC, and on that basis, Defendant denies the allegations in their entirety.

21.     Defendant admits Viacom broadcast domestic MGA advertisements in September 2015. Defendant denies that it breached the alleged Beacon Domestic Ad Sales Agreement. Defendant lacks sufficient information to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 21 of the FAC, and on that basis, Defendant denies the remaining allegations.

22.     Defendant admits Viacom broadcast domestic MGA advertisements in October 2015. Defendant denies that it breached the alleged Beacon Domestic Ad Sales Agreement. Defendant lacks sufficient information to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 22 of the FAC, and on that basis, Defendant denies the remaining allegations.

23.    Defendant admits Viacom broadcast domestic MGA advertisements in November 2015.  Defendant denies that it breached the alleged Beacon Domestic Ad Sales Agreement.  Defendant lacks sufficient information to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 23 of the FAC, and on that basis, Defendant denies the remaining allegations.

24.    Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 24 of the FAC, and on that basis, Defendant denies the allegations in their entirety.

25.    Defendant admits Haworth was an agent of MGA in 2015.  Defendant lacks sufficient information to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 25 of the FAC, and on that basis, Defendant denies the remaining allegations.

26.    Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 26 of the FAC, and on that basis, Defendant denies the allegations in their entirety.

27.    Defendant admits Viacom broadcast domestic MGA advertising in the month of August 2015.  Defendant denies it breached the alleged Haworth Domestic Ad Sales Agreement.  Defendant lacks sufficient information to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 27 of the FAC, and on that basis, Defendant denies the remaining allegations.

28.    Defendant admits Viacom broadcast domestic MGA advertising in the month of October 2015.  Defendant denies it breached the alleged Haworth Domestic Ad Sales Agreement.  Defendant lacks sufficient information to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 28 of the FAC, and on that basis, Defendant denies the remaining allegations.

29.    Defendant admits Viacom broadcast domestic MGA advertising in the month of November 2015.  Defendant denies it breached the alleged Haworth Domestic Ad Sales Agreement.  Defendant lacks sufficient information to form a

1130025

Glaser Weil

belief as to the truth or falsity of the remaining allegations set forth in Paragraph 20 of the FAC, and on that basis, Defendant denies the remaining allegations.

30.     Defendant admits MGA and Viacom International Media Networks, a division of Viacom International, Inc., are parties to a side letter agreement regarding international advertising commitment dated May 16, 2014. Defendant avers the agreement speaks for itself. Defendant lacks sufficient information to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 30 of the FAC, and on that basis, Defendant denies the remaining allegations.

31.     Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 31 of the FAC, and on that basis, Defendant denies the allegations in its entirety.

32.     Defendant denies the allegations in Paragraph 32 of the FAC.

33.     Defendant denies the allegations in Paragraph 33 of the FAC.

34.     Defendant denies that it did not fulfill its obligations under the alleged International Ad Sales Agreement and denies that it breached the alleged International Ad Sales Agreement. Defendant lacks sufficient information to form a belief as to the truth or falsity of the remaining allegations in Paragraph 34 of the FAC, and on that basis, Defendant denies the remaining allegations.

## **FIRST CLAIM FOR RELIEF**

### **(Breach of Contract)**

35.     Defendant incorporates the responses to the allegations in Paragraphs 1 through 34 of the FAC as though set forth in full herein.

36.     Defendant admits that it entered into the Co-Finance Agreement with Viacom, and that the agreement was valid and binding at the time it was entered into. Defendant lacks sufficient information to form a belief as to the truth or falsity of the remaining allegations in Paragraph 36 of the FAC, and on that basis, Defendant denies the remaining allegations.

37.     Defendant denies the allegations in Paragraph 37 of the FAC.

1130025

38.   Defendant denies the allegations in Paragraph 38 of the FAC.

39.   Defendant denies the allegations in Paragraph 39 of the FAC.

## SECOND CLAIM FOR RELIEF

### (Breach of Contract)

40.   Defendant incorporates the responses to the allegations in Paragraphs 1 through 39 of the FAC as though set forth in full herein.

41.   Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations in Paragraph 41 of the FAC, and on that basis, Defendant denies each and every allegation in its entirety.

42.   Defendant denies the allegations in Paragraph 42 of the FAC.

43.   Defendant denies the allegations in Paragraph 43 of the FAC.

44.   Defendant denies the allegations in Paragraph 44 of the FAC.

45.   Defendant denies the allegations in Paragraph 45 of the FAC.

## THIRD CLAIM FOR RELIEF

### (Breach of Contract)

46.   Defendant incorporates the responses to the allegations Paragraphs 1 through 45 of the FAC as though set forth in full herein.

47.   Defendant lacks sufficient information to form a belief as to the truth or falsity of the allegations in Paragraph 47 of the FAC, and on that basis, Defendant denies each and every allegation in its entirety.

48.   Defendant denies the allegations in Paragraph 48 of the FAC.

49.   Defendant denies the allegations in Paragraph 49 of the FAC.

50.   Defendant denies the allegations in Paragraph 50 of the FAC.

## FOURTH CLAIM FOR RELIEF

### (Breach of Contract)

51.   Defendant incorporates the responses to the allegations Paragraphs 1 through 50 of the FAC as though set forth in full herein

52.   Defendant denies the allegations in Paragraph 52 of the FAC.

Glaser Weil

1130025

53.     Defendant denies the allegations in Paragraph 53 of the FAC.

54.     Defendant denies the allegations in Paragraph 54 of the FAC.

# AFFIRMATIVE DEFENSES

Without admitting any wrongful conduct on the part of MGA, and without admitting that Viacom suffered any loss, damage, or injury, MGA hereby alleges the following affirmative defenses.  By designating the following affirmative defenses, MGA does not waive or limit any defenses which are, or may be, raised by their denials, allegations, and averments contained herein.  MGA does not, by alleging any affirmative defense, admit that Viacom does not have the burden of proof for any and all facts and/or legal conclusions underlying any of those defenses.  The defenses are pled in the alternative and are raised to preserve the rights of MGA to assert such defenses and are raised without prejudice to MGA's ability to raise other and further defenses

## FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

1.     Each and every purported claim for relief alleged in the FAC fails to state a cause of action against Defendant.

## SECOND AFFIRMATIVE DEFENSE
### (Unclean Hands)

2.     Each and every purported claim for relief alleged in the FAC is barred by the doctrine of unclean hands.

## THIRD AFFIRMATIVE DEFENSE
### (Estoppel)

3.     Plaintiff's clams are barred by the doctrine of estoppel.

1130025

## FOURTH AFFIRMATIVE DEFENSE

### (Waiver)

4.      Plaintiff's claims are barred by the doctrine of waiver.

## FIFTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

5.      Plaintiff, by its acts and omissions, has failed to mitigate its alleged damages.

## SIXTH AFFIRMATIVE DEFENSE

### (Laches)

6.      Plaintiff's claims are barred by the doctrine of laches.

## SEVENTH AFFIRMATIVE DEFENSE

### (Failure to Join Indispensable Parties)

7.      Plaintiff failed to join indispensable parties, which are necessary to Plaintiff's prosecution of its claims.

## EIGHTH AFFIRMATIVE DEFENSE

### (Statute of Limitations)

8.      The FAC, and each cause of action therein, is barred by the applicable statute of limitations.

## NINTH AFFIRMATIVE DEFENSE

### (Mistake)

9.      Each and every purported claim for relief alleged in the FAC is barred by the doctrines of mistake of fact or mistake of law.

## TENTH AFFIRMATIVE DEFENSE

### (Uncertain and Speculative Damages)

10.      Defendant is informed and believes, and thereon alleges, that the damages claimed by Plaintiff are uncertain and speculative and thereby preclude calculation and recovery thereof.

ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIM

1130025

**Glaser Weil**

## ELEVENTH AFFIRMATIVE DEFENSE

### (Plaintiff's Misconduct or Wrongdoing)

11.    Defendant is informed and believes, and thereon alleges, that the damages complained of in the FAC, if any, were caused by the acts, omissions, and wrongdoing of Plaintiff and/or its employees, agents or predecessors and not any acts, omissions, or wrongdoing by Defendant.  Plaintiff is therefore solely responsible for any damages caused thereby.

## TWELFTH AFFIRMATIVE DEFENSE

### (Acts of Others)

12.    Defendant is informed and believes, and thereon alleges, that the damages complained of in the FAC, if any, suffered by Plaintiff was proximately caused or contributed to by the conduct, acts, omissions, and/or activities of a third party and/or parties either named or unnamed, and any recovery obtained by Plaintiff should be barred and/or reduced according to law, up to and including the whole thereof.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Consent)

13.    Defendant is informed and believes, and thereon alleges, that Plaintiff at all times gave Plaintiff's consent, express or implied, to the acts, omissions, and conduct alleged of Defendant in the FAC.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Ratification)

14.    Defendant is informed and believes, and thereon alleges, that Plaintiff ratified the alleged acts of Defendant.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Acquiescence)

15.    Defendant is informed and believes, and thereon alleges, that Plaintiff acquiesced to the alleged acts of Defendant.

1130025

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Defendant Complied with Laws)

16.    Defendant is informed and believes, and thereon alleges, that Plaintiff's claims against Defendant are barred because Defendant has complied, or substantially complied, with all applicable laws.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Good Faith)

17.    Defendant at all times acted in good faith.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (No Damage)

18.    Defendant is informed and believes, and thereon alleges, that Plaintiff has not suffered, and will not suffer, any damages, by virtue of the conduct alleged against Defendant.

## NINETEENTH FIRST AFFIRMATIVE DEFENSE

### (Reservation of Rights)

19.    Defendant is informed and believes, and therein alleges, that because the FAC herein is couched in conclusory terms, Defendant presently has insufficient knowledge or information on which to form a belief as to whether it may have additional, as yet unstated, affirmative defenses available and cannot fully anticipate all affirmative defenses that may be applicable to the within action.  Accordingly, the right to assert additional affirmative defenses, if and to the extent such affirmative defenses are applicable, is hereby reserved.

## PRAYER

Wherefore, Defendant prays as follows:

1.    That Plaintiff takes nothing by virtue of its FAC;

2.    That the FAC and each cause of action therein be dismissed with prejudice;

1130025

1    3.    That Defendant be awarded costs of suit herein, including attorney's

2  fees; and

3    4.    For such other and further relief as the Court deems just and proper.

4

5  DATED:  February 17, 2016        GLASER WEIL FINK HOWARD
                                     AVCHEN & SHAPIRO LLP

6

7                                    By:  /s/ G. Jill Basinger
                                     PATRICIA L. GLASER
8                                    G. JILL BASINGER
                                     CAMILLA Y. CHAN
9                                         Attorneys for Defendant and
                                          Counterclaimant
10                                        MGA Entertainment, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1130025

**Glaser Weil**

### COUNTERCLAIM

Comes now Defendant and Counterclaimant MGA Entertainment, Inc. ("MGA") for its Counterclaim against Plaintiff and Counterdefendant Viacom International Inc. ("Viacom") and Counterdefendants DOES 1-10, inclusive (collectively, "Counterdefendants") as follows:

### INTRODUCTION

1.      MGA is a consumer entertainment products company that manufactures innovative lines of proprietary and licensed products including toys, games, and dolls. The MGA family includes award-winning brands such as Little Tikes®, Bratz®, Lalaloopsy®, Project MC2™, and Moxie Girlz™.  MGA is based in Van Nuys, CA.

2.      MGA launched its Lalaloopsy brand in the summer of 2010.  Lalaloopsy featured eight 13-inch original dolls aimed at the 5-12 year old demographic.  There was nothing like Lalaloopsy in the market, and the dolls immediately sold out. Lalaloopsy launched with the tag line, "Sew magical - Sew cute."  MGA created each Lalaloopsy character with a fictional theme reflecting the day she was sewn on, the fabric she is sewn from, and her pet.  Lalaloopsy was designed to teach elementary school aged kids that everybody is unique in their own special way, and to encourage a child's imagination and creativity and teach important life lessons such as diversity, individuality, and that everything deserves a second life.  The brand promotes the idea that old things can become new again, everything can be repurposed and nothing should ever go to waste.  The dolls were in such high demand that even after they sold out, they maintained a robust second life in consumer resale on sites such as eBay.  It was the "must have" toy of the season.

3.      In November 2010, Lalaloopsy won the "Large Doll" category in the People's Play Awards, and was featured on the American television program "Live with Regis and Kelly."  CBS's "The Early Show" described Lalaloopsy's original dolls as "the hottest toy of the season."  The New York Post described them as "[c]reating Cabbage Patch-like hysteria among Holiday shoppers."  In December

1130025

1    2010, Lalaloopsy dolls were in the first spot on "Google's Hottest Holiday Internet

2    Searches."  In early 2011, MGA began production on a Lalaloopsy made-for-DVD

3    feature to be released in spring 2012.

4        4.        To support its toy brands, MGA engages partners for advertising support.

5    Advertising support includes the full range of media support such as television

6    programming and commercials, Webisodes, Multi-Channel Networks, visual (web

7    and print), social media, public relations, and Mobile Device Applications ("Apps").

8    Increasingly, an aggressive merchandising campaign coordinated with television

9    animation is a lynchpin in creating a successful children's brand.

10        5.        In 2012, to further promote Lalaloopsy, MGA explored the creation of an

11    animated television series.  This animated television series, coupled with an

12    aggressive merchandizing campaign, would expand sales and reach alternative media

13    platforms such as web content and interactive Apps.  MGA began discussions with

14    several entities for production, promotion, and broadcasting.  Viacom was one of the

15    media networks who expressed interest in partnering with MGA on the Lalaloopsy

16    television series.  During negotiations, Viacom represented that it believed in

17    Lalaloopsy's success and was excited about the joint partnership and potential for

18    economic gains.  Viacom further advised MGA that it could and would provide full

19    media support for the television series, including broadcasting and online promotion.

20    Viacom led MGA to believe Lalaloopsy would receive the same treatment as any

21    other of Viacom's television series.  Viacom actively pursued this contract with MGA

22    and led MGA to believe that Viacom would maintain the brand's integrity and grow

23    its exposure base and product reach.

24        6.        For over 20 years, MGA and Viacom have partnered for their mutual

25    benefit in advertising. MGA has spent hundreds of millions of dollars in advertising

26    on Viacom's media platforms and maintained a positive working relationship with

27    Viacom.  Because of this long-standing relationship with Viacom, MGA had no

28    reason to believe Viacom's representations were false or made in bad faith.  MGA

Glaser Weil

1130025

therefore selected Viacom as its media partner for the Lalaloopsy television series.

## JURISDICTION

7.   The Court has subject matter jurisdiction over MGA's Counterclaim under 28 U.S.C. §1367.

8.   Venue is appropriate in this Judicial District because venue in the main action is appropriate.

## PARTIES

9.   Defendant and Counterclaimant MGA is a corporation formed under the laws of the State of California with its principal place of business in California.

10.   Plaintiff and Counterdefendant Viacom is a corporation formed under the laws of the State of Delaware with its principal place of business in New York.

11.   The true names and capacities of the defendants named herein as Does 1 through 10, inclusive, are currently unknown to MGA, which therefore sues such Counterdefendants by such fictitious names.  MGA will amend this Counterclaim to show their true names and capacities when the same have been ascertained.  MGA is informed and believes, and based thereon alleges, that Does 1 through 10, inclusive, were responsible in some manner for the acts and transactions hereinafter alleged, and are liable to MGA therefore.

12.   MGA is informed and believes, and based thereon alleges, that at all times mentioned herein, each of the Doe Counterdefendants was the agent or employee of Viacom and at all times mentioned herein was acting with the course and scope of said agency and employment.

## THE AGREEMENT

13.   MGA and Viacom entered into a Series Co-Financing Agreement on or about October 9, 2012 (the "Agreement").  The parties expressly agreed that they intended to enter a long-form agreement, and that the Agreement was a placeholder.  Based on its long-standing business relationship with Viacom, MGA was comfortable executing the short-form agreement.

14.    The Agreement contained several key terms.  Viacom was to coproduce the Lalaloopsy series and contribute $5,208,684 ($100,167 per episode) to produce 52 episodes, which would be broadcasted on a regularly scheduled basis.  Viacom has two Nickelodeon channels: a main Nickelodeon channel aimed at 5-12 year olds reaching over 100 million homes (the "Nickelodeon Channel"), and Nick Jr., a smaller offshoot channel aimed at 3-5 year olds with a smaller reach of approximately 70 million homes (the "Nick Jr. Channel").  Viacom committed to launch the series on the Nickelodeon Channel with meaningful consultation with MGA.  Viacom would then broadcast the series on either the Nickelodeon Channel or Nick Jr. Channel on a regularly scheduled basis, between the hours of 8 a.m. and 9 p.m.

15.    MGA placed great importance on having the Lalaloopsy series broadcasted on a regularly scheduled basis on Viacom's flagship Nickelodeon Channel.  Not only did the Nickelodeon Channel reach 30 million more homes, its viewership constituted the target audience for the Lalaloopsy brand - the 5-12 year old demographic.  MGA understood that the inclusion of Viacom's ability to broadcast the show either on the Nickelodeon Channel or Nick Jr. Channel was to afford Viacom the flexibility to "burn off" the show if it performed poorly.  The Agreement did not afford Viacom the "sole discretion" to choose which channel to broadcast the series on.  Viacom was aware of its ability to do contract for sole discretion, as it has contracted for sole discretion in the past with MGA and others.

16.    Under the agreement, MGA was tasked with creating animated episodes at 22 minutes in running time.  Industry standards reflect that 22 minute episodes are aimed at the 5-12 year old demographic, and the Nickelodeon Channel regularly broadcasts 22 minute episodes.  The Nick Jr. Channel, in contrast, broadcasts 11 minute episodes aimed at the pre-school 3-5 year old demographic.

17.    Viacom contracted to receive all advertising revenues, exclusive rights to broadcast the 52 episodes, a right to use the content on its website and in its mobile App, and a right to royalty payments - including minimum guarantees of $2,000,000

in 2013, $3,000,000 in 2014, and $4,000,000 in 2015.  MGA calculated these minimum guarantees to be commensurate with the sales growth reasonably expected from Viacom's full media support.  The minimum guarantees were structured to allow yearly growth of the show, culminating in the ability to air a new show every day for almost two full months without repeat.  MGA was therefore willing to contract for a substantial minimum guarantee in the final year, as it expected Lalaloopsy marathons, daily airing, and block airing.  More viewers and viewing opportunities would cause more product sales, and support the final $4,000,000 guarantee.

## VIACOM'S BAD FAITH

18.    The Lalaloopsy television series premiered on Nickelodeon in March 2013 with excellent ratings and accolades from Viacom.  Nickelodeon advised the show was performing wonderfully and that they were happy with it.  Lalaloopsy remained on the Nickelodeon Channel for several months, consistently maintaining excellent ratings and viewership.  Then, suddenly without cause and without notifying or consulting with MGA, Viacom moved the Lalaloopsy show to the Nick Jr. Channel.

19.    Viacom's conduct in moving the Lalaloopsy television series from the Nickelodeon Channel to the Nick Jr. Channel damaged the Lalaloopsy brand because it permanently aged down the brand and took it away from its established target audience.  Lalaloopsy was designed and aimed for the 5-12 age range, a large market with incredible growth opportunity.  By placing the show on the Nick Jr. Channel, however, Viacom caused the brand to become a "baby" brand for the 3-5 age range, which older children rejected on that basis alone.  Once a product is aged down, it is very difficult to age back up.  As a result of Viacom's conduct, Lalaloopsy's 7-year age range rapidly became a 2-year age range, and Lalaloopsy's consumer pool and growth capability shrunk dramatically.  Further, the Nick Jr. Channel has approximately 30 million less viewers than the Nickelodeon Channel.  The minimized

ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIM

1130025

age bracket and the significantly reduced brand exposure led to lower sales for MGA, and substantial damage to the Lalaloopsy brand.

20.    When MGA learned of the move from the Nickelodeon Channel to the Nick Jr. Channel, MGA immediately objected and inquired why Viacom moved the successful show to a lesser channel.  Viacom proffered the hollow excuse that Lalaloopsy was not a good lead in for boys' shows.  But at the time, the Nickelodeon Channel was skewed very heavily towards girls.  And the Lalaloopsy animated series performed better with boys than its competitors.  Moreover, Lalaloopsy dolls had been on the market for three years before the broadcasting of the animated series. Viacom had seen the scripts and shows, and knew what to expect in content and target demographics.

21.    Following Viacom's unilateral decision to move the animated series, it breached the Agreement by failing to broadcast the programming on a regularly scheduled basis.  Viacom repeatedly changed the show's broadcast scheduling, causing inconsistent and unpredictable showings.  Viacom further failed to advise MGA of these changes, which frustrated MGA's own attempts to support the show via MGA's own website and through social media.   MGA received significant complaints from Lalaloopsy viewers, who could not ascertain when the show would broadcast.  Furthermore, Viacom failed to regularly broadcast new episodes as scheduled, but instead showed reruns.

22.    In addition to Viacom's erratic scheduling of Lalaloopsy, Viacom provided no support for the program.  The Lalaloopsy animated series received little to no on-air promotion, and was buried three (3) clicks from the main page on the Nick Jr. website and App.  Children and their harried parents have limited attention span and time to search through a website and find information.

23.    Upon information and belief, Viacom failed to adequately support the Lalaloopsy animated series because, under the Agreement, Viacom was to receive a significant minimum guarantee, which increased annually.  As a result, Viacom

Glaser Weil

1130025

focused its efforts on other brands and television series and allowed the Lalaloopsy program to flounder, all the while collecting on its guaranteed minimum payments from MGA.

24.    Viacom was granted exclusive rights to exploit the Lalaloopsy television series on its website and to create an App to further the media support for the brand. Viacom knew by May 2012 that viewership habits were changing. Viacom's viewers were migrating away from the linear broadcast platform (i.e., broadcast television) to web-based media and Apps. Because Viacom had been a 20-year partner, and was one of the largest media conglomerates in the world, MGA believed Viacom's representations that it had a plan to adapt to the new digital world. MGA therefore trusted Viacom with its property, and expected that property would be exploited in the new, digital realm. This was especially important to MGA, as the animated series was a key component of an aggressive marketing campaign for the Lalaloopsy brand.

25.    By summer 2013, both the Nickelodeon Channel and Nick Jr. Channel were experiencing an unprecedented drop in viewership. This steady decline in viewership continues through today. Contrary to MGA's reasonable expectations, Viacom has not rectified this loss of viewership or adapted to the new digital world. Instead, Viacom clings to the dying linear broadcast model. Viacom admits it produced a poor, frustrating website and an equally poor App that failed to function correctly or engage its consumers.

26.    MGA also granted Viacom the exclusive ability to leverage the Lalaloopsy show on subscription video on demand platforms ("SVOD") such as Netflix, Hulu, and Amazon. Despite being granted exclusive SVOD rights for the Lalaloopsy television series, Viacom refused to utilize its SVOD rights to broaden the exposure of the Lalaloopsy brand.

27.    When MGA discovered that Viacom was unwilling, or unable, to leverage the SVOD rights for the Lalaloopsy television series, MGA repeatedly requested a return of the SVOD rights for the animated series to allow MGA to

1130025

market the series to the SVOD platform to gain exposure for the Lalaloopsy brand, even while allowing Viacom to retain some of the profits from MGA's efforts.

28.    Upon information and belief, Viacom refused to allow MGA to leverage the SVOD rights, which Viacom itself failed to do, in order to favor other non-MGA properties in which it held a greater financial stake.

29.    Upon information and belief, Viacom bowed down to pressure from MGA's competitors (also advertisers on Viacom's platforms) to "bury" the Lalaloopsy series.  Viacom favored various non-MGA properties in which it held a greater financial stake and is double dipping by actively burying Lalaloopsy; relying on its ill-gotten minimum guarantee payment, all the while reaping the financial benefits from the non-MGA properties and advertising.  Viacom used the Agreement to push its own agenda in bad faith, shifted focus away from MGA's brand (where there was a guaranteed payment); fully supporting other brands, to MGA's detriment. Viacom's bad faith tactics frustrated the purpose of the Agreement and denied MGA the contracted for benefits.

30.    MGA repeatedly voiced its frustration over the unfair way in which Viacom was conducting itself towards Lalaloopsy and Viacom's contractual breaches. When the breaches were not rectified MGA disputed the final minimum guarantee payment amount.

31.    Viacom continued to act in bad faith however, by indicating through Sarah Levy (Chief Operating Officer (COO) of Viacom Inc.'s Kids and Family Group) that should MGA seek any remedies for Viacom's bad faith treatment of the Lalaloopsy show, Viacom would suspend all of MGA's advertising.  MGA's advertising is wholly unrelated to the Agreement. MGA was shocked that Viacom would threaten a 20 plus year relationship, and other unrelated contracts to gain leverage in this dispute.

32.    Indeed, Viacom's threat was taken very seriously by MGA.  The repeated threats by Viacom to suspend MGA's on-air advertising came during the

Glaser Weil

1  pre-holiday sales season.  MGA immediately began investigating other advertising
2  forms to mitigate its own damages from Viacom's unwarranted threats.

3      33.    On November 2, 2015, Viacom made good on its threat and suspended
4  MGA's advertising in an effort to extort a minimum guarantee payment from MGA.
5  In fact, Viacom went so far as to demand MGA pre-pay other contracts in violation of
6  those terms.

7      34.    MGA notified Viacom in writing that it had reallocated its advertising
8  spend money.  MGA was reasonably justified in taking this action because Viacom's
9  COO, Sarah Levy, had threatened to breach these agreements, and Viacom had in fact
10  breached the agreements by suspending the advertising.

11      35.    Viacom, perhaps realizing it had overplayed its hand, quickly put
12  MGA's advertising back on the air.  Viacom also wanted to continue business as if its
13  suspension of MGA's advertising during the pre-holiday season was of no
14  consequence.

15      36.    MGA relies on television advertising to aid in selling its products.  It is
16  well established that the momentum gained from a successful advertising campaign
17  will have a correlative incremental lift in sales.  Viacom killed MGA's momentum
18  vis-à-vis its unwarranted suspension.

19      37.    MGA has repeatedly contacted Viacom to attempt to mitigate the
20  damages Viacom caused by its failures in broadcasting, promotion, and digital
21  strategy.  Viacom has flatly refused, and its bad faith conduct has damaged, and will
22  continue to damage, MGA's business and the Lalaloopsy brand.

23      38.    Viacom's bad faith conduct and breaches have damaged, and will
24  continue to damage MGA's business in an amount which is still compounding and
25  has yet to be fully determined, but will far exceed $75,000.00.

26              **FIRST CAUSE OF ACTION**
27        **(Breach of Implied Covenant of Good Faith and Fair Dealing)**
28      39.    MGA incorporates by reference all the allegations contained in

Glaser Weil

1130025

1  paragraphs 1 through 38 above.

2    40.    In every agreement there is an implied covenant of good faith and fair

3  dealing, which obligated Counterdefendants to perform under the Agreement fairly

4  and in good faith and to refrain from any act or omission that would hinder or prevent

5  MGA from receiving benefits under the Agreement, or that would impede or make

6  more costly or burdensome MGA's performance under the Agreement.

7    41.    Counterdefendants contracted to create media content in partnership with

8  MGA as outlined above.

9    42.    Upon information and belief, despite Counterdefendants' obligations,

10  Counterdefendants knowingly and willfully breached the implied covenant of good

11  faith and fair dealing by:

12        (i)    frustrating the purpose of the agreement;

13        (ii)    prejudicially and without cause moving the successful Lalaloopsy

14              show from the Nickelodeon Channel to a lesser channel;

15        (iii)    favoring media where it had a greater ownership interest or had

16              the potential to make more money over the media it created with

17              MGA;

18        (iii)    failing to actively promote MGA's media content;

19        (iv)    failing to exploit the SVOD rights to the Lalaloopsy television

20              series; and

21        (v)    frustrating MGA's attempt to mitigate its damages.

22    43.    Counterdefendants' breach of the implied covenant of good faith and fair

23  dealing resulted in the damages to MGA that arise separate and apart from its breach

24  of contract.

25    44.    By its actions alleged herein, Counterdefendants breached this implied

26  covenant.

27    45.    As a proximate result of Couterdefendants' breaches, MGA has suffered

28  and will continue to suffer damages in an amount to be fully determined at trial.

Glaser Weil

1130025

## SECOND CAUSE OF ACTION

### (Breach of Contract)

46.    MGA realleges and incorporates herein by reference each and every allegation set forth in paragraphs 1 through 45 above.

47.    As alleged above, the parties entered into a written Agreement on or about October 9, 2012.

48.    As alleged above, among other things, Counterdefendants failed to broadcast the Lalaloopsy programming on a regularly scheduled basis, constituting material breaches of the Agreement and in no way constitute substantial performance of the terms of Agreement.

49.    MGA has performed all of its obligations to be done or performed under the Agreement, except where performance has been excused or waived.

50.    At all relevant times, MGA was ready, willing and able to perform its obligations under the Agreement.

51.    As a direct and proximate result of Counterdefendants' breaches of the Agreement, MGA has been damaged, and continues to be damaged, in an amount to be determined at trial.

## PRAYER FOR RELIEF

Wherefore, MGA prays for judgment against all Counterdefendants as follows:

1.    That judgment be entered in favor of MGA and against Counterdefendants;

2.    That MGA be awarded damages according to proof, plus accrued interest;

3.    That MGA be awarded restitution according to proof, plus accrued interest;

3.    That Counterdefendants be disgorged of all profits according to proof, plus accrued interest;

4.    That MGA be awarded costs of suit and reasonable attorney's fees; and

5.    For such other relief as the Court may deem just and proper.


DATED:  February 17, 2016          GLASER WEIL FINK HOWARD
                                   AVCHEN & SHAPIRO LLP


                                   By:   /s/ G. Jill Basinger
                                   PATRICIA L. GLASER
                                   G.JILL BASINGER
                                   CAMILLA Y. CHAN
                                       Attorneys for Defendant and
                                       Counterclaimant
                                       MGA Entertainment, Inc.

ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIM

1130025

1

## **DEMAND FOR JURY TRIAL**

2

3          Defendant and Counterclaimant MGA Entertainment, Inc. demands a jury trial.

4

5    DATED:  February 17, 2016          GLASER WEIL FINK HOWARD
                                          AVCHEN & SHAPIRO LLP
6

7                                     By:   /s/ G. Jill Basinger
                                      PATRICIA L. GLASER
8                                     G.JILL BASINGER
                                      CAMILLA Y. CHAN
9                                          Attorneys for Defendant and
                                           Counterclaimant
10                                         MGA Entertainment, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1130025