1  KENDALL BRILL & KELLY LLP
   Richard B. Kendall (90072)
2    *rkendall@kbkfirm.com*
   Randall L. Jackson (244545)
3    *rjackson@kbkfirm.com*
   10100 Santa Monica Blvd., Suite 1725
4  Los Angeles, California 90067
   Telephone: 310.556.2700
5  Facsimile:  310.556.2705

6  Attorneys for Plaintiff and Counterdefendant
   Viacom International Inc.

7

8               **UNITED STATES DISTRICT COURT**

9       **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

10

11 VIACOM INTERNATIONAL INC.,          Case No. 2:15-CV-09621-R (Ex)
   a Delaware corporation,
12                                      **NOTICE OF MOTION AND
                                        MOTION OF VIACOM
13              Plaintiff,              INTERNATIONAL, INC. FOR
                                        SUMMARY JUDGMENT AND
14        v.                            PARTIAL SUMMARY
                                        JUDGMENT; MEMORANDUM OF
15 MGA ENTERTAINMENT, INC.,             POINTS AND AUTHORITIES
   a California corporation,
16                                      *Filed concurrently with Separate
              Defendant.                Statement; Declarations of Sarah Levy,
17                                      Sujata Luther, Jennifer Jankowski,
                                        Justin Halliley, Alexandra Whelan,
18                                      Thomas Horner, and Randall Jackson*

19                                      Judge:   Hon. Manuel L. Real

20
   MGA ENTERTAINMENT, INC., a          Date:  July 18, 2016
21 California corporation,              Time:  10:00 a.m.
                                        Courtroom: 8
22              Counterclaimant,

23        v.

24 VIACOM INTERNATIONAL INC., a
   Delaware corporation; DOES 1-10,
25 inclusive,

26              Counterdefendants.

27

28

281903.1

NOTICE OF MOTION AND MOTION OF VIACOM INTERNATIONAL, INC. FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

**TO MGA ENTERTAINMENT, INC. AND ITS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on July 18, 2016, at 10:00 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Manuel L. Real, located in the United States Courthouse, 312 N. Spring Street, Los Angeles, CA 90012, Viacom International, Inc. ("Viacom") will and hereby does move this Court for Summary Judgment and Partial Summary Judgment.  Viacom seeks summary judgment in its favor on three of its four separate claims for breach of contract, and also seeks summary judgment in its favor on each of the counter-claims brought by MGA Entertainment, Inc. ("MGA").

This Motion is made upon the following grounds:

1.  **First**, there is no genuine issue of material fact as to MGA's liability for Viacom's Second Claim For Relief.  The Second Claim For Relief is for breach of contract, and seeks to remedy MGA's failure to pay for millions of dollars' worth of advertising time that MGA purchased through an advertising agency known as Beacon Media Group but did not pay for.  Viacom seeks summary judgment or partial summary judgment on the following issues:

a.  MGA is liable for each element of Viacom's claim for breach of contract, namely (i) a valid contract between MGA and Viacom to purchase advertising; (ii) Viacom's performance or substantial performance under the contract; (iii) MGA's breach of the contract, and (iv) resulting harm to Viacom.

b.  MGA must pay damages to Viacom in the amount of (i) at least $7,378,421.75; or, at a minimum, at least (ii) $6,566,883.25 for the unpaid advertising.

2.  **Second**, there is no genuine issue of material fact as to MGA's liability for Viacom's Third Claim For Relief.  The Third Claim For Relief is also for breach of contract, and seeks to remedy MGA's failure to pay for hundreds of thousands of dollars' worth of advertising time that MGA purchased through an advertising

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1  agency known as Haworth Media + Marketing but did not pay for.  Viacom seeks

2  summary judgment or partial summary judgment on the following issues:

3      a.      MGA is liable for each element of Viacom's claim for breach of

4  contract, namely (i) a valid contract between MGA and Viacom to purchase

5  advertising; (ii) Viacom's performance or substantial performance under the

6  contract; (iii) MGA's breach of the contract, and (iv) resulting harm to Viacom.

7      b.      MGA must pay damages Viacom in the amount of (i) at least $788,964;

8  or, at a minimum, at least (ii) $711,653 for the unpaid advertising.

9      3.    ***Third***, there is no genuine issue of material fact as to MGA's liability

10  for Viacom's First Claim For Relief.  The First Claim For Relief is for breach of

11  contract, and seeks to remedy MGA's failure to pay $3.5 million of a guarantee

12  payment under a Co-Financing Agreement between MGA and Viacom related to a

13  television program known as *Lalaloopsy*.  Viacom seeks summary judgment or

14  partial summary judgment on the following issues:

15      a.      MGA is liable for each element of Viacom's claim for breach of

16  contract, namely (i) a valid contract between MGA and Viacom (i.e., the Co-

17  Financing Agreement); (ii) Viacom's performance or substantial performance under

18  the contract; (iii) MGA's breach of the contract, and (iv) resulting harm to Viacom.

19      b.      MGA must pay damages to Viacom in the amount of at least $3.5

20  million for its breach.

21      4.    ***Fourth***, there is no genuine issue of material fact supporting MGA's

22  First Cause of Action pled in MGA's Counterclaim.  MGA's First Counterclaim is

23  for breach of the "implied covenant of good faith and fair dealing" in the *Lalaloopsy*

24  Co-Financing Agreement.  Viacom seeks summary judgment or partial summary

25  judgment on the following issues:

26      a.      Viacom did not breach any implied covenant of good faith and fair

27  dealing in the Co-Financing Agreement, and MGA lacks evidence sufficient to

28  create a genuine issue of material fact on this issue.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

281903.1

2

1       b.      MGA lacks evidence sufficient to create a genuine issue of material

2 fact on the elements of causation and damage from the purported "breach."

3       5.      **_Fifth_**, there is no genuine issue of material fact supporting MGA's

4 Second Cause of Action pled in MGA's Counterclaim.  MGA's Second

5 Counterclaim is for breach of the express terms of the _Lalaloopsy_ Co-Financing

6 Agreement.  Viacom seeks summary judgment or partial summary judgment on the

7 following issues:

8       a.      Viacom did not breach any express term of the Co-Financing

9 Agreement, and MGA lacks evidence sufficient to create a genuine issue of material

10 fact on this issue.

11       b.      MGA lacks evidence sufficient to create a genuine issue of material

12 fact on the elements of causation and damage from the purported "breach."

13       This Motion is based on this Notice of Motion, the attached Memorandum of

14 Points and Authorities, the Separate Statement filed concurrently herewith, the

15 Declarations of Sarah Levy, Sujata Luther, Jennifer Jankowski, Justin Halliley,

16 Alexandra Whelan, Thomas Horner, and Randall Jackson filed concurrently

17 herewith, all of the pleadings, files, and records in this proceeding, all other matters

18 of which the Court may take judicial notice, and any argument or evidence that may

19 be presented to or considered by the Court prior to its ruling.

20 DATED:  June 20, 2016           KENDALL BRILL & KELLY LLP

21

22

23                  By:       /s/ Richard B. Kendall

24                        Richard B. Kendall

25                        Attorneys for Plaintiff and
Counterdefendant Viacom International

26                        Inc.

27

28

**Kendall Brill
& Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

281903.1                 3

NOTICE OF MOTION AND MOTION OF VIACOM INTERNATIONAL, INC. FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

## **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................. 1

II.   UNDISPUTED MATERIAL FACTS .................................................... 3

      A.   The Beacon Advertising Purchases ............................................ 3

           1.   MGA Purchased Advertising Through Beacon ................... 3

           2.   Viacom Aired Advertisements In September And October 2015 ...................................................................................... 4

           3.   Viacom Suspends MGA's Advertisements For Two Days Without Effect .................................................................... 4

           4.   Advertisements Purchased Through Beacon Were Non-Cancellable ........................................................................ 5

           5.   In November MGA Tries To Cancel Some, But Not All, Advertisements .................................................................. 5

           6.   Total Amount Owed For Beacon Advertising Purchases ........... 6

      B.   The Haworth Advertising Purchases ........................................ 6

      C.   The Co-Financing Agreement And MGA's Counterclaims ................. 7

           1.   The Minimum Payment And MGA's Failure To Pay It .......... 7

           2.   The Co-Financing Agreement ........................................ 8

           3.   The Parties Agree In Negotiations That The Program Could Be Shown On Either Nickelodeon Or Nick Jr. ................ 8

           4.   Viacom's Broadcast Of The Program ................................ 9

           5.   The Program Targeted Preschoolers .............................. 10

III.  PROCEDURAL BACKGROUND .................................................... 10

IV.   ARGUMENT ................................................................................. 11

      A.   Summary Judgment Standards ............................................ 11

      B.   Viacom Is Entitled To Summary Judgment On Its Claims For Unpaid Advertising Time ...................................................... 11

      C.   Viacom Is Entitled To Summary Judgment On Its Co-Financing Agreement Claim And MGA's Two Counterclaims ...................... 16

           1.   It Is Beyond Dispute That MGA Breached The Contract ......... 16

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

2.    Viacom Did Not Breach An Express Term .................................17

(a)    The "Regularly Scheduled" Provision ............................17

(b)    The "Launch" Provision.....................................................19

3.    Viacom Did Not Breach The Implied Covenant Of Good
Faith And Fair Dealing ................................................................21

(a)    Broadcasting On Nick Jr Was Not A Breach..................21

(b)    The Marketing Of The Program Was Not A Breach .......23

(c)    MGA Cannot Show Causation Or Damage On Its
Implied Covenant Claims..................................................24

V.    CONCLUSION ............................................................................................25

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

281903.1

NOTICE OF MOTION AND MOTION OF VIACOM INTERNATIONAL, INC. FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

*A.I. Credit Corp. v. Gohres*,
    299 F. Supp. 2d 1156 (D. Nev. 2004) ................................................................ 15

*Am. Title Ins. Co. v. Lacelaw Corp.*,
    861 F.2d 224 (9th Cir. 1988) ............................................................................ 20

*Bliss v. California Cooperative Producers*
    30 Cal.2d 240 (1947) ......................................................................................... 13

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
    222 Cal.App.3d 1371 (1990) ...................................................................... 16, 17

*Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*,
    2 Cal.4th 342 (1992) .......................................................................................... 21

*Carnation Co. v. Olivet Egg Ranch*,
    189 Cal.App.3d 809 (1986) ............................................................................... 15

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ........................................................................................... 11

*Deleon v. Verizon Wireless, LLC*,
    207 Cal.App.4th 800 (2012) .............................................................................. 12

*Fantasy, Inc. v. Fogerty*,
    984 F.2d 1524 (9th Cir. 1993)) ................................................................... 14, 19

*Guz v. Bechtel Nat. Inc.*,
    24 Cal.4th 317 (2000) ........................................................................................ 23

*Humetrix, Inc., v. Gemplus S.C.A.*,
    268 F.3d 910 (9th Cir. 2001) ............................................................................. 14

*Inamed Corp. v. Kuzmak*,
    275 F. Supp. 2d 1100 (C.D. Cal. 2002) ............................................................ 15

*Martinez v. Scott Specialty Gases, Inc.*,
    83 Cal.App.4th 1236 (2000) .............................................................................. 16

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

281903.1

iii

NOTICE OF MOTION AND MOTION OF VIACOM INTERNATIONAL, INC. FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

*Peoplesoft U.S.A., Inc. v. Softeck, Inc.*,
    227 F. Supp. 2d 1116 (N.D. Cal. 2002)...................................................... 15

*Richman v. Hartley*,
    224 Cal.App.4th 1182 (2014)............................................................... 11

*Roth v. Madison Nat. Life Ins. Co.*,
    702 F. Supp. 2d 1174 (C.D. Cal. 2010)................................................... 21

*Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*,
    100 Cal.App.4th 44 (2002)................................................................. 22

*Third Story Music, Inc. v. Waits*,
    41 Cal.App.4th 798 (1995)................................................................. 22

*Troyk v. Farmers Group, Inc.*,
    171 Cal.App.4th 1305 (2009)............................................................... 19

*Wasco Prods., Inc. v. Southwall Techs., Inc.*
    435 F.3d 989 (9th Cir. 2006)............................................................... 20

*Wolf v. Walt Disney Pictures & Television*,
    162 Cal.App.4th 1107 (2008)................................................... 18, 20, 21

**Other Authorities**

MERRIAM WEBSTER, "LAUNCH" (2016)................................................... 20

**Rules**

Fed.R.Civ.P. 56(a) ................................................................................... 11

**California Civil Jury Instructions**

CACI 303 .................................................................................... 11, 16

CACI 3931 ................................................................................................ 15

**Treatises**

Restatement of Contracts ...................................................................... 15

Restatement (Second) of Contracts
    § 18 (1981)................................................................................... 12
    § 241 (1981)................................................................................. 19

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

281903.1

iv

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I.    <u>INTRODUCTION</u>

This is a collections case.

Plaintiff-Counterdefendant Viacom is a media corporation that owns cable television channels aimed at children, specifically Nickelodeon, "Nick Jr," and "Nick at Night" (collectively, the "Nickelodeon Networks").  Defendant-Counterclaimant MGA is a toy company.

The matters at issue in this summary judgment motion are as follows.

***First***, MGA bought $7,378,420.75 of advertising time on the Nickelodeon Networks through MGA's agent/media buyer, Beacon Media Group ("Beacon").  MGA also bought $788,964 of advertising time through another advertising agency, Haworth Media+Marketing ("Haworth").  Viacom ran the ads purchased.  But MGA has not paid.  All elements of a breach of contract—the existence of a contract, Viacom's performance, MGA's breach, and resulting damage—are indisputably present.  MGA has no excuse for nonpayment.

***Second***, MGA and Viacom entered into a contract (the "Co-Financing Agreement"), under which Viacom agreed to help finance, and then air for three years, a television program developed by MGA (the "Program") based on a doll called "Lalaloopsy."  MGA agreed to make minimum payments to Viacom.  There is no dispute that this was a valid contract.  There is no dispute that Viacom paid the financing amounts it was required to pay.  There is no dispute that Viacom broadcast the Program for three years.  But MGA did not pay $3.5 million of its minimum payment.

***Third***, to avoid its duties under the Co-Financing Agreement, MGA brought two counterclaims.  These counterclaims describe MGA's purported "excuses" for not making the $3.5 million minimum payment.  MGA's counterclaims have no merit and should be summarily adjudicated against it.

- First, MGA counterclaims that Viacom breached the Co-Financing

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

Agreement's "implied covenant of good faith and fair dealing."  MGA's theory is that Viacom broadcast the Program on "Nick Jr," a television channel aimed at preschool children, instead of the main Nickelodeon channel, which targets both preschoolers and older children.  MGA says this somehow hurt it.  But the Co-Financing Agreement explicitly allowed Viacom to broadcast the program on Nick Jr.  The agreement states that the Program may be broadcast "on either the main Nickelodeon channel or the Nick Jr. channel."  Viacom's right to broadcast the Program on Nick Jr was specifically negotiated between MGA and Viacom.  The implied covenant of good faith cannot vary an express, heavily negotiated contract term.

- Second, MGA counterclaims that Viacom breached a contract provision requiring Viacom to air the program "on a regularly scheduled basis during the hours 8 a.m. to 9 p.m. for three years."  There was no breach.  Viacom aired the Program at least once per week, 52 weeks per year, for three years; for the bulk of the three years, the Program was aired five or seven days per week.  Throughout that period, at least one airing per day was between the hours of 8 a.m. and 9 p.m.  Nonetheless, MGA claims that Viacom was required to broadcast the program at exactly the same time every week for the entire three year period.  That is a facially implausible reading of the contract.  And, even if Viacom somehow did breach that term of the Co-Financing Agreement, such a breach was not "material" and cannot justify MGA's nonperformance or its counterclaim.

Put simply, MGA has not paid millions of dollars it owes.  There is no genuine factual dispute that MGA owes this money.  The Court should summarily adjudicate Viacom's first three claims, and MGA's two counterclaims, in Viacom's favor.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

281903.1

2

NOTICE OF MOTION AND MOTION OF VIACOM INTERNATIONAL, INC. FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

## II.    UNDISPUTED MATERIAL FACTS

### A.    The Beacon Advertising Purchases

#### 1.    MGA Purchased Advertising Through Beacon

Beacon was MGA's agent for the purchase of television advertising time in 2015. *See* Viacom Statement of Uncontroverted Facts In Support of Motion For Summary Judgment ("UF"), Fact 1-2.[1]  MGA was responsible for paying for the advertising time on television networks which Beacon purchased.  UF 2, 4.[2]

In 2015, MGA contracted to purchase advertising time on the Nickelodeon Networks through Beacon.  The contract worked as follows.  First, MGA authorized Beacon to make an overall advertising purchase on a number of television networks (including, expressly, the Nickelodeon Networks).  UF 3-4.  These documents expressly stated that MGA was liable for these purchases.  UF 4.

Next, Beacon sent to Viacom a set of specifications for MGA advertisements. UF 5.  In response, Viacom developed documents called "media plans."  UF 6.  The media plans set a proposed schedule for MGA advertising and its cost.  UF 6-7. Finally, Beacon obtained MGA's approval of the media plans, and informed Viacom that the media plans were confirmed.  UF 7-8.

Additionally, in August, 2015, Beacon advised that it was taking over as MGA's agent in connection with an advertising purchase related to MGA's "Bratz" dolls.  UF 9-20.  Viacom proceeded to broadcast this advertising as well.  *Id*. Ultimately, seven media plans were confirmed between Viacom and Beacon on behalf of MGA for advertising to air in the second half of 2015.  UF 11.

---

[1] The specific record evidence supporting each of these Uncontroverted Facts is described in Viacom's Statement of Uncontroverted Facts .

[2] Beacon's indisputable role as MGA's agent is discussed in more detail in Viacom's opposition to MGA's frivolous motion for summary judgment, *see* Dkt # 38.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

281903.1

3

### 2.   Viacom Aired Advertisements In September And October 2015

Viacom broadcast  MGA ads placed through Beacon in September and October, 2015.  UF 12. Beacon invoiced MGA for this amount.  UF 13.  MGA did not pay for any of this advertising, which has a total value of $3,780,631.  UF 14.

### 3.   Viacom Suspends MGA's Advertisements For Two Days Without Effect

By the fall of 2015, MGA had not paid for hundreds of thousands of dollars of advertising it had purchased through Beacon and that Viacom ran in August, 2015.  UF 15.  Viacom's payment terms for MGA advertising required payment within 60 days.  UF 16.  For the August advertisements, that period expired on Monday, November 2, 2015.  On that date, Viacom suspended MGA's advertisements and informed MGA that it was doing so.  UF 17.  The next day, November 3, 2015, MGA informed Viacom that it would pay for the August advertisements.  UF 18.  That same day, Viacom informed MGA and Beacon that MGA's previously-purchased advertisements would begin running the next day, or November 4.  UF 19.  On Wednesday, November 4, 2015, Viacom began running MGA advertisements once again.  UF 20.

This two-day suspension had no effect whatsoever on any benefit available to MGA under its contract with Viacom.  The advertising "time" that MGA purchased was not linked to a specific day of the week or specific time of day.  UF 21-24.  Rather, MGA purchased what are called "gross ratings points" or "GRP" for a particular week.  *Id*.  The  "GRP" entitled MGA to have its advertisements viewed by a certain percentage of its overall target audience, <u>over the course</u> of the week of November 2.[3]  *Id*.  For the week of November 2, 2015, Viacom immediately made

---

[3] In advertising generally, a "Gross Rating Point" is a measure designed to measure advertising impact.  A purchase of "GRPs" over the course of a week is essentially a

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

281903.1                                4

NOTICE OF MOTION AND MOTION OF VIACOM INTERNATIONAL, INC. FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

1   up the GRP's lost in the first two days of the week in the later portion of that same

2   week.  So MGA received <u>all</u> the advertising it had purchased for the week of

3   November 2.  *Id.*  Beacon agreed as much.  *Id.*

### 4. <u>Advertisements Purchased Through Beacon Were Non-Cancellable</u>

6   A written agreement between Beacon and Viacom, incorporated into the

7   terms of MGA's advertising purchases, provided that Beacon's purchases on behalf

8   of MGA were non-cancellable.  UF 25.  Paul Caldera, a Beacon employee and

9   MGA's agent for purchasing advertising in 2015, confirmed this agreement—"once

10  ordered, it's non-cancellable," "anything that's ordered is non-cancellable.  As long

11  as  -- when it's ordered, you can't cancel it."  UF 26.  Beacon also specifically

12  informed MGA that the ads MGA bought in 2015 were non-cancellable.  UF 26-27.

13  By "non-cancellable," Beacon meant that Viacom was under no obligation to release

14  MGA from an obligation to pay for the advertisements, once purchased.  *Id.*

### 5. <u>In November MGA Tries To Cancel Some, But Not All, Advertisements</u>

17  On November 3, 2015, immediately after receiving Viacom's assurance that

18  the suspension for non-payment had been lifted, MGA informed Viacom that it

19  wished to "cancel" the prospective November and December 2015 advertisements it

20  had purchased for one of its product lines (a series of dolls called "Bratz").  UF 28.

21  That same day, MGA told Beacon that it wished to cancel Viacom advertisements

22  for another product line (called "Lalaloopsy Dance With Me") going forward.  UF

23  29.  MGA did not request that Viacom cancel advertisements for the other product

24  lines it had purchased through Beacon. UF 30.  Rather, MGA told Beacon that

25  advertising for these other products should stay on the air.  *Id.*

26  _____

27  promise that a client's advertisements will be seen by—based on ratings—a certain number of viewers during that week, regardless of how many viewers are watching a single television program at a single time.  UF 21-24.

28

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1    In response, Viacom informed MGA that it had no right to cancel.  UF 31.

2  However, on November 23, 2015, after MGA had confirmed that it would not pay

3  for the remainder of its Bratz or "Lalaloopsy Dance With Me" advertising, Viacom

4  pulled the remaining "Bratz" and "Lalaloopsy Dance With Me" advertising from

5  broadcast, in an effort to mitigate Viacom's damages.  UF 33.  This amount

6  represented about $380,000 of MGA's overall advertising purchases.  *Id*.  Viacom

7  continued to air a  relatively small amount of advertising for MGA products, which

8  MGA had purchased and not purported to cancel, into December, 2015.  UF 35.

### 6.    Total Amount Owed For Beacon Advertising Purchases

10    On December 6, 2015, MGA asked Beacon, its agent, to calculate the amount

11  it owed for all of MGA's September-December purchases, assuming that MGA's

12  purported "cancellations" were effective.  UF 36-38.  Beacon calculated that MGA

13  owed $6,566,883.25 for advertisements already purchased and run by Viacom

14  between September and December, 2015, <u>excluding</u> the Bratz and Lalaloopsy Dance

15  With Me ads that were purportedly "cancelled." *Id*.  Beacon did not agree that the

16  ads were cancellable, and calculated that MGA owed more than $7.7 million for the

17  September-December 2015 ads it had purchased.  *Id*.

18    Including the purportedly "cancelled" ads, and deducting the approximately

19  $380,000 which Viacom sold off in an attempt to mitigate damage, the total amount

20  owed by MGA is <u>$7,378,420.75</u>.  UF 39.  This amount reflects <u>only</u> the cost of

21  MGA advertising time for advertisements which Viacom <u>actually ran</u> between

22  September and November, 2015.  UF 39-40.  MGA has not paid the money owed.

23  UF 41.

### B.    The Haworth Advertising Purchases

25    In early 2015, MGA entered into an agreement through another advertising

26  agency, Haworth, to purchase advertising.  With MGA's authorization, Haworth

27  entered into an agreement with Viacom in mid-2015 to purchase advertising for the

28  "Bratz" line of dolls on the Nickelodeon Networks.  UF 42-44.  Between July 27

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

281903.1                                    6

NOTICE OF MOTION AND MOTION OF VIACOM INTERNATIONAL, INC. FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

1   and August 17, 2015, Haworth-purchased Bratz advertising ran on the Nickelodeon

2   Networks.  UF 46.  MGA then moved the Bratz account to Beacon.  UF 47.  But

3   Haworth retained MGA's authorization to purchase advertising for another toy line,

4   known as "Little Tikes." UF 47-49. Haworth-purchased Little Tikes advertising ran

5   on the Nickelodeon Networks between September 29, 2015 and November 22,

6   2015.  UF 50.

7          Just like the Beacon advertising, this Haworth advertising was non-

8   cancellable.  UF 45, 49.  Nonetheless, MGA instructed Haworth to attempt to cancel

9   the Little Tikes advertising it had purchased for November, commencing in the

10  week of November 9, 2015.  UF 51.  Viacom was unable to "sell off" this non-

11  cancellable advertising.  UF 52.  In total, the amount due for Haworth advertising is

12  $788,964.[4]  UF 53.

13         **C.    The Co-Financing Agreement And MGA's Counterclaims**

14                 **1.    The Minimum Payment And MGA's Failure To Pay It**

15         In an agreement (the "Co-Financing Agreement") dated as of October 9,

16  2012, Viacom and MGA agreed to share the costs of producing at least 52 episodes

17  (two seasons) of a television series (the "Program")  based on MGA's "Lalaloopsy"

18  dolls.  UF 54-55.  Viacom contributed more than $5.2 million toward financing the

19  Program.  UF 56.  MGA created and developed the Program.  UF 57.

20         Viacom received consideration from distributing the program (e.g., subscriber

21  fees, affiliate fees and revenues, etc.).  UF 58.  The agreement also entitled Viacom

22  to receive minimum guarantee payments from MGA.  UF 59.  In 2015, the

23  minimum payment due to Viacom was $4 million, due by September 15, 2015. UF

24  59-60.  To date MGA has not paid $3.5 million of that minimum guarantee.  UF 61.

---

[4] The amount due for Haworth advertising purchased and run before the November
9 date on which MGA purported to "cancel" the ads is $711,653.  UF 53.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

281903.1                                    7

1

2.      **The Co-Financing Agreement**

2       The "Nickelodeon" channel operated by Viacom targets both preschool

3   children and younger children. UF 62-63.   During the school year, the channel airs

4   its  preschool programming in an 8 a.m. to 2 p.m. block of programming targeted at

5   the preschool audience.  UF 65.  Viacom also operates a separate Nick Jr channel

6   which targets exclusively preschool-aged children.  UF 64.

7       The Co-Financing Agreement specifically gave Viacom the right to broadcast

8   *Lalaloopsy* on <u>either</u> the Nickelodeon <u>or</u> Nick Jr channels.  UF 66.  Specifically,

9   Viacom's programming commitment under the agreement was as follows:

10      [Viacom] hereby commits to launch the series on the main Nickelodeon
        channel (such launch plan to be developed in meaningful consultation

11      with MGA) and thereafter broadcast the Programming on either the

12      main Nickelodeon channel or the Nick Jr. channel on a regularly
        scheduled basis during the hours 8 a.m. to 9 p.m. for three years

13      (subject to customary resting periods, which shall not be longer than

14      three consecutive months).

15  *Id.*

16      3.      **The Parties Agree In Negotiations That The Program Could**

17              **Be Shown On Either Nickelodeon Or Nick Jr**

18      At the commencement of negotiations over the Co-Financing Agreement,

19  MGA asked Viacom to air the program exclusively on the main Nickelodeon

20  channel.  UF 67.  MGA sent to Viacom an informal term sheet stating as much.  *Id*.

21  But Viacom rejected this requirement.  UF 68.  After conversations with Viacom's

22  negotiator on the issue, MGA accepted Viacom's position (and sent a term sheet

23  confirming that agreement).  UF 69-70.  That term sheet, and the first formal draft of

24  the Co-Financing Agreement (and every draft thereafter) specifically indicated that

25  the Program could be shown on Nick Jr.  UF 70-72.  MGA never again provided a

26  draft suggesting that Viacom could not broadcast the program on Nick Jr.  *Id*.

27      Moreover, in the negotiations, MGA tried to impose a specific scheduling

28  commitment on Viacom.  UF 73-75.  Specifically, MGA wanted Viacom to agree to

**Kendall Brill
& Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

281903.1

8

1    the following language:  "The parties expressly agree that the time period will be a

2    favorable time period for the targeted audience of girls between ages 4 to 7, and will

3    be "sandwiched" between a strong lead-in and a strong lead-out."  UF 74.  MGA

4    also asked that the Co-Financing Agreement state that the Program would be

5    scheduled on a "continuous" basis.  UF 75.

6        Viacom rejected this proposal unequivocally, stating:

7        As broadcasters, **retaining complete control over all scheduling
        decisions is imperative to our core business of maximizing ratings**.
8        **This is an absolute for us** . . . . [W]e have already agreed to air the
        show on a regularly scheduled basis and we are willing to further agree
9        to air the show between 8A and 9P, which are the hours when kids
        watch the most TV. **We cannot offer any further compromise on this
10       point as lead-ins and lead-outs, etc need to remain our decision as a
        network**

11
     UF 76.  After this response, MGA made no more effort to insert language regarding
12
     the scheduling of the Program or its broadcast on Nick Jr into the Co-Financing
13
     Agreement.  UF 77.
14
                    **4.    Viacom's Broadcast Of The Program**
15
         Consistent with the Agreement's requirement that Viacom "launch the series
16
     on the main Nickelodeon channel (such launch plan to be developed in meaningful
17
     consultation with MGA)," Viacom developed a "launch plan."  UF 78-80.  The
18
     launch plan called for a March 29, 2012 launch of the series, followed by four
19
     weeks of premieres and re-runs, on the main Nickelodeon channel. *Id*.  It made no
20
     mention of any commitment to air the series on the main Nickelodeon channel
21
     beyond that.  *Id*.  The launch plan was provided to MGA.  MGA accepted this
22
     launch plan and made no objection to it whatsoever.  UF 81.
23
         The Program debuted on the main Nickelodeon channel on March 29, 2013.
24
     UF 82.  Viacom premiered 12 episodes on Nickelodeon, at which point the show
25
     was transferred to Nick Jr. UF 83-84.  On Nickelodeon the Program was aired once
26
     per week between 8 a.m. and 9 p.m., and in some weeks on every weekday. UF 85.
27
     On Nick Jr, for the rest of the three year period (and thereafter) the Program was
28

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

281903.1
                                        9
     NOTICE OF MOTION AND MOTION OF VIACOM INTERNATIONAL, INC. FOR SUMMARY JUDGMENT
     AND PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

1    always aired at least once per week between  8 a.m. to 9 p.m. as required, and

2    generally either five or seven  days per week.  UF 86.  As required by the

3    Agreement, Viacom broadcast all 52 episodes of the Program, and did so for three

4    years.  UF 87.  In fact, Viacom broadcast episodes of the Program more than <u>1,700</u>

5    <u>times</u> over that three-year period (if it had been shown once per week, it would have

6    been shown only 156 times).  UF 88.

7           The Co-Financing Agreement did not describe any specific promotional or

8    marketing obligations for Viacom.  UF 89-90.  Nonetheless, Viacom did promote

9    the Program.  Declaration of Sarah Levy in Support of Summary Judgment ("Levy

10   Decl.") at ¶ 12.

11                      **5.    <u>The Program Targeted Preschoolers</u>**

12          It was clear at all relevant times that the Program was targeted at a preschool

13   audience.  Between April and September, 2012, Viacom repeatedly told MGA that

14   Viacom's staff responsible for preschool programing would be handling the show.

15   UF 91-95.  The "launch plan" for the Program, approved by MGA, expressly stated

16   that the series was aimed at preschoolers.  UF 94.  Indeed, MGA released a press

17   release, before the Program's first episode aired, stating that "MGA

18   ENTERTAINMENT AND NICKELODEON JOIN TO LAUNCH

19   LALALOOPSY™, NEW ANIMATED PRESCHOOL SERIES SET TO

20   PREMIERE SPRING 2013."  UF 95.

21   **III.    <u>PROCEDURAL BACKGROUND</u>**

22          Viacom filed its initial complaint in December, 2015.  Viacom subsequently

23   amended the pleading, twice, to assert newly-ripe claims as MGA failed to pay for

24   additional months of advertising.

25           MGA asserted two counterclaims.  First, MGA claims that Viacom breached

26   the implied covenant of good faith in the Co-Financing Agreement, primarily by

27   broadcasting the Program on Nick Jr.  Dkt. # 13, Counterclaim at ¶¶ 39-45.  Second,

28   MGA alleges that Viacom breached the provision requiring that the Program be

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

281903.1

10

1  shown on a "regularly scheduled" basis. Dkt. # 13, Counterclaim ¶¶ 46-51.  Other

2  than the "regularly scheduled" theory, MGA did not assert any other claim for

3  express breach of contract in its counterclaim.  *Id*.

4  **IV.  ARGUMENT**

5      **A.    Summary Judgment Standards**

6      Summary judgment must be granted when "there is no genuine dispute as to

7  any material fact" and "the movant is entitled to judgment as a matter of law."

8  Fed.R.Civ.P. 56(a).  Once the movant has met its initial burden, the responding

9  party must identify specific facts that show a genuine issue of material fact for trial,

10  *i.e.*, that the facts could allow a reasonable jury to return a verdict for the responding

11  party.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

12      **B.    Viacom Is Entitled To Summary Judgment On Its Claims For**

13          **Unpaid Advertising Time**

14      Viacom's second and third claims are for breach of contract, based on MGA's

15  failure to pay for the advertisements MGA bought through Beacon and Haworth.

16  To prevail on these claims under California[5]  law Viacom must prove the following:

17      ***First,*** the existence of a contract, i.e., that Viacom and MGA entered into one

18  or more contracts in which MGA, acting through its agents Beacon or Haworth,

19  agreed to purchase advertising on Viacom networks; ***Second***, that Viacom

20  performed, or substantially performed, its obligations under the contract, i.e., that

21  Viacom did all of the significant things that the contract required Viacom to do,

22  namely airing the advertising purchased, or that Viacom was justifiably excused

23  from performance (i.e., not airing the advertising with an excuse); ***Third,*** that MGA

24  breached by failing to pay for the advertising it purchased; and ***Fourth***, resulting

25

26  [5] MGA has previously cited to California law on these issues.  Thus, Viacom
assumes for purposes of this motion that California law controls, without taking any

27  position on choice-of-law issues.  Regardless, these familiar elements of a breach-
of-contract cause of action are the same in every American jurisdiction.

28

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

281903.1
11
NOTICE OF MOTION AND MOTION OF VIACOM INTERNATIONAL, INC. FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

harm, i.e., that Viacom was harmed by MGA's breach of contract.  *See* CACI 303; *Richman v. Hartley*, 224 Cal.App.4th 1182, 1186 (2014) ("To prevail on a cause of action for breach of contract, the plaintiff must prove (1) the contract, (2) plaintiff's performance … (3) defendant's breach, and (4) resulting damage to the plaintiff.").

Here, each element is easily proven.  There is no reasonable dispute of fact.

**There is no genuine factual dispute on contract formation.**  First, there was clearly a binding agreement entered into between MGA and Viacom, by which MGA agreed to pay for the ads Viacom aired.  Contracts, of course, may be made expressly through words, or implied through performance, or both.  *See* Restatement (Second) of Contracts § 18 (1981).  The familiar elements of the formation of a contract are offer and acceptance.  *Deleon v. Verizon Wireless, LLC*, 207 Cal.App.4th 800, 813 (2012).  Here, Beacon and Haworth were unquestionably MGA's agents for the purchase of advertising.[6]  As MGA's authorized agents, Beacon and Haworth unquestionably committed MGA to purchase and pay for advertising.  *See evidence cited supra*, at pp. 3-7.  Beacon and Haworth specifically approved media plans and accepted Viacom's offers of non-cancellable advertising.  *Id*.  Beacon and Haworth admitted that by accepting these arrangements, they were

---

[6] The overwhelming evidence establishing Beacon's status as MGA's agent is discussed in more detail in Viacom's opposition to MGA's frivolous summary judgment motion, Dkt # 38-1.  Such evidence includes: (a) MGA's own binding admissions in its answer that Beacon is an agent of MGA; (b) testimony of MGA's CEO,  that Beacon was authorized to purchase advertisements on the Nickelodeon Networks on MGA's behalf; (c) testimony of MGA's general counsel, Ellie Trope, that Beacon was so authorized; (d) testimony of Beacon witnesses, including Beacon's CEO, Shelly Hirsch, and the Beacon partner responsible for the MGA account, Paul Caldera, that Beacon was MGA's agent for the purpose of purchasing advertising on Viacom's networks and that MGA specifically authorized the advertising purchased for the fall of 2015; and (e) 2006 and 2015 letters sent by MGA explaining that Beacon was its authorized agent for the purchase of advertising.  *See id*.

281903.1

12

NOTICE OF MOTION AND MOTION OF VIACOM INTERNATIONAL, INC. FOR SUMMARY JUDGMENT AND PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1  entering into binding agreements as to which MGA was responsible for payment.

2  *Id.*; *see* UF 5, 7. 8-9.  Clearly, MGA and Viacom entered into enforceable contracts.

3         ***There is no genuine factual dispute on performance.***  Nor is there any

4  question that Viacom performed—Viacom aired the advertising at issue, fulfilling

5  its performance obligations.  *See* UF 12, 34-35, 41.  MGA has claimed that

6  Viacom's two-day suspension of MGA's advertisements, on November 2 and 3,

7  2015, because of MGA's non-payment of its August advertising bill, somehow

8  excuses it from paying for any of the non-cancellable advertisements MGA

9  purchased.[7]  This argument is preposterous.

10        First, Viacom was clearly entitled to suspend its performance when MGA

11  failed to pay the August invoice for August advertising that was due on November

12  1, 2015.  A party is entitled to suspend its performance when another party has

13  demonstrated that it is insolvent or otherwise unwilling to provide consideration.  1

14  Witkin, Summary 10th (2005) Contracts § 816, p. 907 (noting that a party is entitled

15  to suspend performance when  it "appears that the performance will not take place"

16  for reasons including inability or unwillingness to pay);  *Bliss v. California*

17  *Cooperative Producers* 30 Cal.2d 240, 248, 250 (1947) (same).  On November 3,

18  2015, when MGA said it would pay the overdue August invoice, Viacom

19  immediately agreed to resume airing MGA's ads, and did so the very next day,

20  November 4, 2015.  UF 19-20.

21        Second, and in any event, MGA was deprived of no contractual right or

22  benefit whatsoever from Viacom's two-day suspension.  As noted above (*see*

23  Section II.A.3, *supra*), MGA bought advertising on a weekly basis, not a daily basis.

24  UF 21-24. MGA contracted to receive a specified number of "gross ratings points,"

25  

------

26  [7] MGA claims that Viacom's only basis for  suspending advertisements on
November 2 and 3,  2015 was  MGA's failure to make minimum payments under
27  the Co-Financing Agreement.  MGA's assertion is false.  MGA was overdue for its
28  August advertising.

281903.1

13

NOTICE OF MOTION AND MOTION OF VIACOM INTERNATIONAL, INC. FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1   each week.  *Id.*  It did not bargain for, and was not entitled to receive, advertising on

2   each day during the week.  *Id*.  Thus, despite the suspension, MGA received <u>all</u> of

3   the benefit for which it had contracted, as its own agents admitted.  In other words,

4   Viacom performed fully, and certainly provided the "substantial" performance

5   required.  *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1529-30 (9th Cir. 1993),

6   *rev'd on other grounds* 510 U.S. 517 (1994) (noting that breach by a plaintiff must

7   be "material" to excuse a defendants' failure to perform, and summarizing standards

8   of materiality).[8]

9        ***There is no genuine factual dispute on breach***.  There can be no dispute

10  whatsoever as to MGA's breach.  After MGA paid the Beacon August invoice on

11  November 4, 2015, it simply stopped paying for other invoices.  It failed to pay for

12  the September, October, November, and December 2015 Beacon invoices, or for

13  any of the Haworth invoices, all for specific advertising actually aired by Viacom.

14  UF 12-14, 34, 41, 53.

15       ***There is no genuine factual dispute on resulting harm***.  Viacom

16  unquestionably suffered harm from MGA's breach.  MGA has not paid anything for

17  millions of dollars of aired advertising.  That is harm.

18       The amount of harm is also readily quantified.  It is the amount due for

19  advertising run by Viacom, but not yet paid for, less the approximately $380,000 by

20  which Viacom attempted to mitigate its harm after it learned in November 2015 that

21  MGA would not pay for Beacon-purchased advertisements for the "Bratz" and

22  "Lalaloopsy Dance With Me" toys.  *See Humetrix, Inc., v. Gemplus S.C.A.,* 268 F.3d

23  910, 918 (9th Cir. 2001) ("Under California law, a plaintiff that prevails on a breach

24  of contract claim should receive as nearly as possible the equivalent of the benefits

---

25

26  [8] In addition,, the two-day, consequence free suspension could not <u>possibly</u> excuse
    MGA's obligation to pay for Beacon ads which Viacom ran in <u>September and

27  October</u> 2015 (worth $3,780,63) or the Haworth advertising (worth $788,946).  Yet
    MGA has paid nothing for those ads, either.

28

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

of performance") (quotations omitted). The total amount owed is thus $7,378,420

for the Beacon ads, and $788,964 for the Haworth ads.  UF 39-41, 53.

MGA asserts that its purported "cancellation" of advertising for some of its

toy brands after November 3, 2015 means that Viacom had an obligation to mitigate

its damages in some (unknown) amount greater than $380,000.  But even if MGA

were right about this, that would not allow MGA to avoid partial summary judgment

on liability.  A plaintiff's failure to mitigate damage goes only to the amount of

damage recoverable, not liability.  *See*  Restatement of Contracts (Second) § 350,

comment b; 1 Witkin, Summary 10th (2005) Contracts § 914, p. 1011 (explaining

rule).  In any event, MGA is wrong on the mitigation point.

First, MGA has the burden of proving that Viacom improperly failed to

mitigate.  CACI 3931; *Carnation Co. v. Olivet Egg Ranch*, 189 Cal.App.3d 809, 818

(1986) (so holding in a contract case).  But MGA has no mitigation evidence.  No

record evidence supports an argument that Viacom could or should have done

anything beyond what it actually did.  *See* 1 Witkin, Summary 10th (2005)

Contracts , § 916, p. 1013 ("unsuccessful" efforts to avoid loss will not support a

claim for mitigation, so long as the plaintiff's efforts are "reasonable").

Second, Viacom did not have a duty to mitigate.  The terms of the contract

made the advertisements, once confirmed, "non-cancellable."  UF 23-27.  Because

Viacom sought to enforce an <u>express</u> term of the parties' contract, the doctrine of

mitigation does not apply. *See Peoplesoft U.S.A., Inc. v. Softeck, Inc.*, 227 F. Supp.

2d 1116, 1121 (N.D. Cal. 2002) ("The court finds that the defense of mitigation of

damages is not available here, because [plaintiff] seeks to enforce an express term of

a contract for payment and therefore has no duty to mitigate.") (applying California

law);  *A.I. Credit Corp. v. Gohres*, 299 F. Supp. 2d 1156, 1162 (D. Nev. 2004)

("reasonable *per se*" to enforce expressly bargained-for remedy).

Third, from any angle, MGA cannot avoid liability for the advertising it did

<u>not</u> request Viacom to cancel.  "Repudiation" of a contract (like MGA's

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

281903.1

15

NOTICE OF MOTION AND MOTION OF VIACOM INTERNATIONAL, INC. FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

1  "cancellation" here) must be <u>unequivocal</u> to trigger the non-breaching party's

2  obligation to mitigate. *Inamed Corp. v. Kuzmak*, 275 F. Supp. 2d 1100, 1132 (C.D.

3  Cal. 2002) ( "heavy burden" under California law of showing unequivocal

4  repudiation) (quoting *Martinez v. Scott Specialty Gases, Inc.*, 83 Cal.App.4th 1236,

5  1247 (2000)).  In November, 2015, MGA informed Beacon <u>only</u> that it wished to

6  cancel advertisements for "Bratz" and "Lalaloopsy Dance With Me" products.  UF

7  28-30.  This was not a cancellation of all MGA advertising, much less an

8  "unequivocal" cancellation.  Beacon itself calculated that MGA owed Viacom

9  $6,566,883.25 <u>without</u> the "cancelled" ads.  UF 37.[9]  MGA must pay at least that

10  amount.  Summary judgment on the second and third claims is required.

11  **C.  <u>Viacom Is Entitled To Summary Judgment On Its Co-Financing</u>**

12  **<u>Agreement Claim And MGA's Two Counterclaims</u>**

13  **1.  <u>It Is Beyond Dispute That MGA Breached The Contract</u>**

14  The undisputed record proves every element of Viacom's claim for MGA's

15  breach of the Co-Financing Agreement.  All parties agree the Co-Financing

16  Agreement was a valid agreement.  *See* Dkt. # 13 at ¶ 36 (MGA answer).  There is

17  also no dispute that MGA failed to pay $3.5 million of the $ million minimum

18  guarantee due September 15, 2015.  UF 60-61.  Therefore, there is no question

19  whatsoever concerning the existence of (1) a valid contract, (2) MGA's breach, and

20  (3) resulting damage to Viacom in the amount of $3.5 million.  *See* CACI 303;

21  *Careau & Co. v. Sec. Pac. Bus. Credit, Inc*., 222 Cal.App.3d 1371, 1388 (1990).

22  In addition, Viacom has performed and/or substantially performed its

23  obligations under the Co-Financing Agreement, the fourth element Viacom must

24  prove to prevail on its claim.  MGA freely admits that Viacom paid $5.2 million to

25

26  _____

27  [9] The value of the indisputably non-cancelled Haworth ads run by Viacom was

28  $711,653, and at a minimum MGA must pay that amount.  UF 53.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

281903.1                                    16
NOTICE OF MOTION AND MOTION OF VIACOM INTERNATIONAL, INC. FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

finance the Program and that it launched the series in 2013. UF 56. Viacom broadcast the program on at least a weekly basis for more than three years. UF

MGA asserts that it is excused from paying the $3.5 million due to purported "breaches" by Viacom. Those "breaches" are also set forth in MGA's Counterclaim, which pleads both a cause of action for breach of express written contract and one for the implied covenant of good faith. But MGA's claims of breach have no merit whatsoever, and thus MGA has no excuse for nonpayment. And, for the same reasons, its two Counterclaims fail.

### 2. Viacom Did Not Breach An Express Term

#### (a) The "Regularly Scheduled" Provision

In its counterclaim, MGA asserted one (and only one) theory as to why Viacom breached an express contract term. Counterclaim, Dkt. #13, at ¶¶ 21, 48. MGA contends that Viacom breached the Co-Financing Agreement provision requiring that the Program be broadcast "on a regularly scheduled basis during the hours 8 a.m. to 9 p.m. for three years (subject to customary resting periods, which shall not be longer than three consecutive months)." *Id*.; *see* UF 66. According to MGA, Viacom "repeatedly changed the show's broadcast scheduling, causing inconsistent and unpredictable showings" and sometimes showed "reruns." Dkt. # 13 at 21.

In fact, Viacom has broadcast the Program at least once per week, 52 weeks per year, for the entire period between the debut of the Program in March, 2013, and the present. UF 85-88. No "resting periods" were taken. *Id.* At least one of these showings was always between the hours of 8 a.m. and 9 p.m. *Id.* Indeed, while the precise timeslot of the Program has varied, for most of its three-year history the Program has aired either five or seven times per week, sometimes twice or more per day, resulting in more than 1,700 airings, which greatly exceeds the minimum number of 156 airings. *Id.*

281903.1

17

NOTICE OF MOTION AND MOTION OF VIACOM INTERNATIONAL, INC. FOR SUMMARY JUDGMENT AND PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1    Viacom's actions—regular, consistent showings of the Program as part of

2    Viacom's television schedule—complied with the "regularly scheduled basis" term.

3    Under California law, this Court must consider the language of a written contract in

4    light of the terms of the contract and the extrinsic evidence, to see if contract

5    language is ambiguous.  *Wolf v. Walt Disney Pictures & Television*, 162

6    Cal.App.4th 1107, 1126 (2008).  If, in light of the extrinsic evidence, there is no

7    ambiguity, or if "there is no material conflict in the extrinsic evidence," the Court

8    interprets the contract as a matter of law.  *Id.*  Here, there is no conflict in either the

9    intrinsic or extrinsic evidence, and MGA's claim fails as a matter of law.

10    *Intrinsic evidence*. The Co-Financing Agreement, in the same sentence that

11    contains the "regularly scheduled" language, explicitly states that the Program

12    would "launch on the main Nickelodeon channel" and "thereafter" be broadcast "on

13    either the main Nickelodeon channel or the Nick Jr channel."  Obviously, "regularly

14    scheduled" could not have meant that the Program was required to air at the same

15    time every week, when the contract itself explicitly envisions that it could air on two

16    different television channels.  Also, the Co-Financing Agreement itself contains a

17    definition of the term "regular airing," stating that "'regular airing' or 'regularly

18    airing' means airing at least once per week between the hours of 8 a.m. to 9 p.m."

19    Levy Decl. Ex. B at ¶ 11.  Nothing in the Co-Financing Agreement suggests that

20    "regularly scheduled" means anything more restrictive.

21    *Extrinsic evidence*. Not a shred of extrinsic evidence supports MGA's notion

22    that "regularly scheduled" means "same time slot each week."  To the contrary, as

23    discussed above, Viacom specifically rejected MGA's proposal requiring the

24    Program to be in a particular time slot.  UF 73-77, 67-72.  Viacom's negotiator

25    insisted, in her own words at the time, that "retaining complete control over all

26    scheduling decisions is imperative to our core business of maximizing ratings."  UF

27    76.  MGA's negotiator agrees that she "accepted" Viacom's position, and that after

28    receiving this message from Viacom "MGA no longer sought to impose …

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

281903.1                                                          18
NOTICE OF MOTION AND MOTION OF VIACOM INTERNATIONAL, INC. FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

1  conditions on programming." UF 77. Given these discussions, there is no evidence

2  that "regularly scheduled" meant "Viacom must schedule the show in the same time

3  slot each week."

4    ***No material breach***. Even if MGA could show that there was a breach of the

5  "regularly scheduled" provision (it cannot) its argument would still fail. Only a

6  "material" or "total" breach of contract excuses performance by the other party. *See*

7  1 Witkin, Summary 10th (2005) Contracts, § 852, p. 938 ("a slight breach that does

8  not go "to the root" of the contract will not justify termination"). "The materiality

9  of a partial breach of contract is determined by the importance or seriousness of the

10  breach . . ." *Fantasy, Inc.*, 984 F.2d at 1529-1530 (granting summary judgment

11  where undisputed facts showed no material breach); *see* Restatement (Second) of

12  Contracts § 241 (1981). Here, MGA has offered no evidence whatsoever, including

13  expert evidence, demonstrating <u>any</u> causal link between Viacom's scheduling

14  decisions and actual harm to MGA—much less harm sufficient to allow MGA to

15  avoid paying $3.5 million. UF 96. To the contrary, as noted above, Viacom's

16  scheduling of the Program resulted in more than 1,700 airings. UF 88. Because

17  MGA cannot show harm from this purported "breach," MGA's counterclaim for

18  breach of express written contract, which requires MGA to prove resulting damage

19  from a breach of the "regularly scheduled" provision, also fails. *See Troyk v.*

20  *Farmers Group, Inc.*, 171 Cal.App.4th 1305, 1352 (2009) (causation necessary

21  element of claim for breach of contract).

22    **(b)**   <u>The "Launch" Provision</u>

23    In discovery, MGA has suggested that it will also contend that Viacom

24  breached the Co-Financing Agreement's provision requiring Viacom to "launch the

25  series on the main Nickelodeon channel (such launch plan to be developed in

26  meaningful consultation with MGA)" before broadcasting the program on either

27  Nickelodeon or Nick Jr. UF 66. MGA's theory, apparently, is that "launch the

28

**Kendall Brill
& Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

281903.1

19

NOTICE OF MOTION AND MOTION OF VIACOM INTERNATIONAL, INC. FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

1  series" meant that Nickelodeon was required to premiere <u>every one</u> of the episodes

2  of the series on Nickelodeon before showing <u>any</u> of them on Nick Jr

3       This argument is completely without merit.  First, <u>in its own answer</u> MGA

4  disclaimed the theory.  Specifically, MGA stated that it "admits that [the]

5  Lalaloopsy series was launched on the main Nickelodeon channel in March of

6  2013." Dkt # 13 at ¶ 16.  A statement in a party's answer is a binding judicial

7  admission.  *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988).

8  Nor did MGA assert this theory as a basis for breach of contract in its counterclaim,

9  and the Court may reject MGA's contention for that reason alone.  *Wasco Prods.,*

10  *Inc. v. Southwall Techs., Inc.* 435 F.3d 989, 991 (9th Cir. 2006) (summary judgment

11  cannot be opposed with matters not in the pleadings).

12       Beyond these decisive procedural bars, MGA's theory fails as a matter of law

13  as contract interpretation.  *See Wolf*, 162 Cal.App.4th at 1126 (contracts may be

14  interpreted as a matter of law when unambiguous or when there is no conflict in the

15  extrinisic evidence).  There is no contractual language supporting MGA's view.

16  The contract does not say that each episode must "premiere" on Nickelodeon. The

17  phrase "launch the series," as a matter of common English usage, means a

18  commitment to begin <u>the television series</u>, not to premiere each individual episode

19  of the television until all 52 episodes are shown at least once.  *See* MERRIAM

20  WEBSTER, "LAUNCH" (2016) (defining "launch" as "to put into operation or set in

21  motion; initiate, introduce; to get off to a good start").

22       Were that not enough, the extrinsic evidence is absolutely decisive.  The Co-

23  Financing Agreement required Viacom to develop a "launch plan" in "meaningful

24  consultation" with MGA.  UF 66.  Obviously, this "launch plan" would define the

25  series' "launch."  Viacom did prepare such a plan.  UF 78-81.   MGA and its

26  representatives were consulted on the Launch plan, and "endorsed" it.  UF 81.  The

27  Launch Plan did not require that every episode of the Program be shown on

28  Nickelodeon.  Rather, it stated that the series would launch and then broadcast four

**Kendall Brill**
**& Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

281903.1                                    20

NOTICE OF MOTION AND MOTION OF VIACOM INTERNATIONAL, INC. FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

1    weeks of premiere episodes and encores (re-runs) on Nickelodeon.  UF 78-81.

2    Moreover, the Launch Plan was consistent with the negotiation history of the Co-

3    Financing Agreement.  MGA had proposed that the series not only "launch" on the

4    main Nickelodeon channel, but stay on the main Nickelodeon channel for three

5    years.  67-72.  Viacom did not agree, and, as MGA's <u>own negotiator admits</u>,

6    Viacom said that depending on how the Program performed "when it was launched,

7    Viacom would either keep it on Nickelodeon or it would move to Nick Jr." *Id.* MGA

8    "accepted" Viacom's position and agreed that the series would "launch" on

9    Nickelodeon, and then be shown on <u>either</u> Nickelodeon or Nick Jr. for the remaining

10   three years of the contract term.  *Id.*  MGA's "launch" theory is simply without

11   basis.

### 3.    <u>Viacom Did Not Breach The Implied Covenant Of Good</u> <u>Faith And Fair Dealing</u>

#### (a)    <u>Broadcasting On Nick Jr Was Not A Breach</u>

15        MGA also claims that Viacom's decision to broadcast the Program on Nick Jr

16   breached the Co-Finance Agreement's implied covenant of good faith and fair

17   dealing.  MGA makes this argument despite the <u>express</u> contract provision which

18   gave Viacom the right to broadcast the Program on Nick Jr.  MGA's argument fails

19   as a matter of fact and law.

20        It is black-letter law that the implied covenant of good faith and fair dealing

21   cannot prohibit a party from taking an action expressly permitted by the contract;

22   "the implied covenant will only be recognized to further the contract's purpose; it

23   will not be read into a contract to prohibit a party from doing that which  is

24   expressly permitted by the agreement itself." *Roth v. Madison Nat. Life Ins. Co.*, 702

25   F. Supp. 2d 1174, 1178-79 (C.D. Cal. 2010)  (quoting *Wolf* , 162 Cal.App.4th at

26   1122);  *see also Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2

27   Cal.4th 342, 374 (1992) ("We are aware of no reported case in which a court has

28

**Kendall Brill
& Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

281903.1

21

NOTICE OF MOTION AND MOTION OF VIACOM INTERNATIONAL, INC. FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

1    held the covenant of good faith may be read to prohibit a party from doing that

2    which is expressly permitted by an agreement.").

3         Here, applying these principles, Viacom clearly did not violate the implied

4    covenant of good faith and fair dealing.  It did exactly what the contract permitted it

5    to do.  In the Co-Financing Agreement, Viacom promised to "broadcast the

6    Programming on either the main Nickelodeon channel or the Nick Jr. channel."  The

7    option to broadcast the program on the Nick Jr channel was a choice expressly given

8    to Viacom. Viacom cannot have breached the contract by making that choice.

9         Viacom anticipates that MGA may, in opposition, cite to cases that have

10   suggested that the covenant of good faith and fair dealing applies when a party has

11   unlimited "discretion" to act (for example, where one party to the contract has an

12   unlimited right to make a subjective artistic judgment).  *See Storek & Storek, Inc. v.*

13   *Citicorp Real Estate, Inc.,* 100 Cal.App.4th 44, 59 (2002) (discussing such cases).

14   But those cases have no application here.  As the California Court of Appeal has

15   explained:

16        when a party is given absolute discretion by express contract language,
          the courts will imply a covenant of good faith and fair dealing to limit
17        that discretion in order to create a binding contract and avoid a finding
          that the promise is illusory. **However, when the contract is**
18        **adequately supported by adequate consideration regardless of the**
          **discretionary power, there is no need to impose a covenant of good**
19        **faith in order to create mutuality. The conclusion to be drawn is**
          **that the courts are not at liberty to imply a covenant directly at**
20        **odds with a contract's express grant of discretionary power except**
          **in those relatively rare instances when reading the provision**
21        **literally would, contrary to the parties' clear intention, result in an**
22        **unenforceable, illusory agreement.**

23

24   *Storek & Storek, Inc.*, 100 Cal.App.4th at 59.  Here, plainly, the Co-Financing

25   Agreement would not be "unenforceable" without imposing an implied obligation of

26   good faith and fair dealing on Viacom concerning its right to air the program on

27   Nick Jr.  To the contrary, Viacom's right to air the program on Nick Jr was an

28   expressly-granted right, given to Viacom as part of the negotiation of an overall

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

281903.1

22

1  commercial arrangement.  There was substantial other consideration on all sides.

2  *See also Third Story Music, Inc. v. Waits,* 41 Cal.App.4th 798, 808 (1995) (implied

3  covenant can only interfere with an expressly-granted discretionary power when a

4  failure to do so would make the agreement illusory or unenforceable).  Accordingly,

5  the implied covenant does not apply to Viacom's decision to air the program on

6  Nick Jr, at all and as a matter of law.

7          Beyond this, it is absolutely clear from the negotiation history of the Co-

8  Financing Agreement that all parties understood that Viacom had the right, at its

9  discretion, to air the Program on Nick Jr.  MGA initially proposed a requirement

10  that the series stay on Nickelodeon exclusively.  UF 67-72.  According to MGA's

11  negotiator, "I advocated for MGA's proposal that after the initial launch of the series

12  on Nickelodeon, the Lalaloopsy series would continue to be broadcast on

13  Nickelodeon.  [Viacom] did not agree.  [It] said that depending on how the

14  Lalaloopsy series performed on Nickelodeon when it launched, Viacom would

15  either keep it on Nickelodeon or it would move to Nick Jr.  In the end, MGA

16  accepted [Viacom's] position." UF 69 [Declaration of Sujata Luther in Support of

17  Summary Judgment ("Luther Decl.") at ¶ 6 (emphasis added)].  Later, as discussed

18  above, in response to another attempt to limit its scheduling discretion, Viacom

19  again emphasized its need for "complete control" over scheduling and programming

20  decisions.  UF 73-77.  And, again, MGA accepted Viacom's position.  *Id.*  Viewed

21  from any angle, it was clear that Viacom's right to move the Program to Nick Jr was

22  a bargained-for feature of the Co-Financing Agreement.  MGA's claim for breach of

23  the implied covenant of good faith is without basis.

24          **(b)    The Marketing Of The Program Was Not A Breach**

25          MGA's Counterclaim also pleads that Viacom's marketing of the Program

26  (including Viacom's purported failure to make the Program available for "streaming

27  video on demand") violated the implied covenant of good faith.  This argument

28  fails.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

281903.1

23

As the California Supreme Court has repeatedly held, the implied covenant of good faith and fair dealing cannot be used to <u>add</u> terms to a contract. *See Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 349-50 (2000) (holding that the implied covenant of good faith "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement"). Here, the Co-Financing Agreement imposes no specific marketing requirements. It does not require Viacom (or, for that matter, MGA) to take any particular steps to market the Program. To the contrary, all the Agreement says about this issue is that both Viacom and MGA would retain their "customary" promotional rights. UF 89-90. MGA has no basis in the contract, or in the implied covenant of good faith, for requiring Viacom to undertake marketing steps found nowhere in the Agreement, as a matter of law.[10]

### (c)   <u>MGA Cannot Show Causation Or Damage On Its Implied Covenant Claims</u>

Finally, MGA cannot show that the purported "breaches" of the covenant of good faith and fair dealing, even if they existed (and they did not) caused it harm.

MGA's only estimate of its damages comes from its retained expert. UF 96. According to MGA's expert, MGA's damage was caused by the Program's move from the Nickelodeon channel to the Nick Jr channel. The expert says this "aged down" the doll's brand by associating it with preschool children. *Id*. But this theory is nonsense. As shown in Section II.C.5, *supra*, from the first moment MGA showed the Program to Viacom, it was absolutely clear to both sides that it was a series for preschoolers. On Nickelodeon itself, pursuant to the agreed-upon Launch Plan, the Program aired in the preschool "block." UF 83, 94. MGA's own Press Release identified it as a "preschool" show. UF 95. Indeed, the mere fact that the

---

[10] In fact, Viacom did make significant efforts to market the Program, including on-air promotions, Lalaloopsy "specials," online marketing and streaming of videos, an online game, and other promotional events. Levy Decl. ¶ 12.

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

281903.1

24

1  Agreement provided that the Program <u>could</u> appear on Nick Jr is sufficient evidence

2  that the Program was always designed for preschoolers.  Nick Jr is an exclusively

3  preschool-oriented channel, as MGA freely admits.  Dkt. No. 13 (MGA

4  Counterclaim ¶ 14).  MGA claims that its <u>doll</u> was targeted at an older audience.

5  But even if this were true (it is not), the doll was not the Program.  MGA cannot

6  claim damage from an "aging down" of the doll based on the Program, when MGA

7  and everyone else involved agreed that the Program—which is what Viacom agreed

8  to air—was for preschoolers.

9  **V.    <u>CONCLUSION</u>**

10      For the foregoing reasons, the Court should grant summary judgment in

11  Viacom's favor on its First, Second, and Third Claims.  The Court should grant

12  summary judgment against MGA on MGA's First and Second Counterclaims.

13

14  DATED:  June 20, 2016          KENDALL BRILL & KELLY LLP

15

16                                By:  _____/s/ Richard B. Kendall_____
                                       Richard B. Kendall
17                                     Attorneys for Plaintiff and
                                       Counterdefendant Viacom International
18                                     Inc.

19

20

21

22

23

24

25

26

27

28

**Kendall Brill
& Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

281903.1

25

NOTICE OF MOTION AND MOTION OF VIACOM INTERNATIONAL, INC. FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES