1  KENDALL BRILL & KELLY LLP
   Richard B. Kendall (90072)
2    rkendall@kbkfirm.com
   Randall L. Jackson (244545)
3    rjackson@kbkfirm.com
   10100 Santa Monica Blvd., Suite 1725
4  Los Angeles, California 90067
   Telephone: 310.556.2700
5  Facsimile:  310.556.2705

6  Attorneys for Plaintiff and Counterdefendant
   Viacom International Inc.

7

8             **UNITED STATES DISTRICT COURT**

9     **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

10

| | |
|---|---|
| 11 VIACOM INTERNATIONAL INC., a Delaware corporation, | Case No. 2:15-CV-09621-R (Ex) |
| 12 Plaintiff, | **PLAINTIFF VIACOM INTERNATIONAL INC.'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| 13 v. | |
| 14 MGA ENTERTAINMENT, INC., a California corporation, | |
| 15 | |
| 16 Defendant. | *Filed concurrently with Memorandum of Points and Authorities; Declarations of Thomas Horner; Sarah Levy, Sujata Luther, Jennifer Jankowski, Justin Halliley, Alexandra Whelan, and Randall Jackson* |
| 17 | |
| 18 | |
| 19 | |
| 20 | Judge:   Hon. Manuel L. Real |
| 21 | Date:    July 18, 2016 Time:    10:00 a.m. Crtrm.:  8 |
| 22 MGA ENTERTAINMENT, INC., a California corporation, | |
| 23 | |
| 24 Counterclaimant, | |
| 25 v. | |
| 26 VIACOM INTERNATIONAL INC., a Delaware corporation; DOES 1-10, inclusive, | |
| 27 | |
| 28 Counterdefendants. | |

281722.2

Case No. 2:15-CV-09621-R (Ex)

PLAINTIFF VIACOM INTERNATIONAL INC.'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSION OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**Kendall Brill & Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

# **TABLE OF CONTENTS**

Page

UNCONTROVERTED FACTS RE: CLAIM 2  (Unpaid Advertising
        Purchased Through Beacon) ....................................................................... 1

UNCONTROVERTED FACTS RE: CLAIM 3  (Unpaid Advertising
        Purchased Through Haworth) ..................................................................... 9

UNCONTROVERTED FACTS RE: CLAIM 1 AND MGA
        COUNTERCLAIMS (Breach Of Co-Financing Agreement  For
        *Lalaloopsy* Television Series) ............................................................... 13

281722.2                                       i                       Case No. 2:15-CV-09621-R (Ex)

PLAINTIFF VIACOM INTERNATIONAL INC.'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSION OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

Pursuant to Local Rule 56-1, Plaintiff and Counterdefendant Viacom International Inc. ("Viacom") hereby submits the following Separate Statement of Uncontroverted Facts and Conclusions of Law in support of its Motion for Summary Judgment.

## UNCONTROVERTED FACTS RE: CLAIM 2

### (Unpaid Advertising Purchased Through Beacon)

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 1. The Beacon Media Group LLC ("Beacon") was "an agent of MGA," authorized by MGA "to place television advertising on MGA's behalf" in 2015. | 1. Declaration of Randall Jackson In Support of Motion For Summary Judgment ("Jackson Decl.") Ex. 1 (Answer to SAC) at ¶¶ 4, 19; *id.* Ex. 2 (Deposition of Isaac Larian ("Larian depo.") at 75:23-76:4); *id.* Ex. 3 (Deposition of Ellie Trope ("Trope depo.") at 92:2-92:4); *id.* Ex. 4 (Deposition of Paul Caldera ("Caldera depo.") at 53:25-54:2); Declaration of Thomas Horner ("Horner Decl.") ¶ 4 & Ex. A; Dkt No. 29-3 (Declaration of Ellie Trope In Support of MGA's Motion For Summary Judgment ("Trope SJ Decl.") Ex. A). |

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

281722.2

1

Case No. 2:15-CV-09621-R (Ex)

PLAINTIFF VIACOM INTERNATIONAL INC.'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| 2. MGA was responsible for paying for advertising placed by Beacon on its behalf. | 2. Jackson Decl. Exs. 7-9; Jackson Decl. Ex. 4 (Caldera Depo. at 23:2-23:7). |
| 3. Pursuant to "authorization[s] for media placement," Beacon purchased advertising from television networks, including Nickelodeon, on MGA's behalf. | 3. Jackson Decl. Exs. 7-9. |
| 4. Beacon's "authorization[s] for media placement" state that Beacon is acting only as MGA's agent and that MGA is liable for purchases Beacon made on its behalf. | 4. Jackson Decl. Exs. 7-9. |
| 5. To make a purchase on behalf of MGA, Beacon sent to Viacom a "schedule of specifications." | 5. Declaration of Justin Halliley ("Halliley Decl.") ¶ 6; Jackson Decl. Ex. 4 (Caldera Depo. at 32:6-32:9). |
| 6. From the schedule of specifications, Viacom developed documents called "media plans." | 6. Halliley Decl. ¶ 7; Declaration of Alexandra Whelan ("Whelan Decl.") ¶ 4; Jackson Decl. Ex. 4 (Caldera Depo. at 32:15-32:21). |
| 7. The media plans included a proposed schedule for advertising and the corresponding costs. | 7. Halliley Decl. ¶ 7; Whelan Decl. ¶ 6. |

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

281722.2                                                                    2                    Case No. 2:15-CV-09621-R (Ex)
PLAINTIFF VIACOM INTERNATIONAL INC.'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSION OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| 8. Beacon obtained MGA's approval of the media plans and conveyed MGA's approval to Viacom. | 8. Halliley Decl. ¶¶ 7-8; Jackson Decl. Ex. 4 (Caldera Depo. at 166:25-167:21) |
| 9. In August 2015, Beacon advised Viacom that it was taking over as the agent for MGA's advertising purchase related to its "Bratz" dolls. | 9. Halliley Decl. ¶ 9. |
| 10. Viacom broadcast August 2015 advertising related to MGA's "Bratz" dolls. | 10. Halliley Decl. ¶ 9. |
| 11. Seven media plans were confirmed between Viacom and Beacon for MGA advertising scheduled to air from June to December 2015. | 11. Whelan Decl. ¶¶ 4-5 & Exs. B-H. |
| 12. Viacom aired advertising that Beacon had ordered on MGA's behalf in September and October 2015. | 12. Whelan Decl. ¶¶ 9-10. |
| 13. MGA was billed, through Beacon, for advertising aired by Viacom in September and October 2015, in a total amount of approximately $3,780,631. | 13. Whelan Decl. ¶¶ 9-10. |
| 14. MGA has paid $0 in response to the bills from Viacom for | 14. Whelan Decl. ¶¶ 9-10. |

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

PLAINTIFF VIACOM INTERNATIONAL INC.'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSION OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| advertising aired in September and October 2015. | |
| 15. By the fall of 2015, MGA had not paid for some of the advertising it had purchased through Beacon and that Viacom ran in August 2015. | 15. Jackson Decl. Ex. 5 (Halliley Depo. at 139:25-140:3); *id.* Ex. 6. |
| 16. Viacom's payment terms for MGA's advertising required payment within (at most) 60 days. | 16. Justin Decl. ¶ 10 & Exs. B-D. |
| 17. On November 2, 2015, Viacom suspended MGA's advertisements purchased through Beacon. | 17. Jackson Decl. Ex. 5 (Halliley Depo. at 193:23-194:25). |
| 18. On November 3, 2015, MGA informed Viacom that it would pay the balance owed for the August advertising aired by Viacom. | 18. Jackson Decl. Ex. 10. |
| 19. On November 3, 2015, Viacom informed Beacon and MGA that it would "get MGA advertising back on air tomorrow." | 19. Jackson Decl. Exs. 10 & 11. |
| 20. On November 4, 2015, Viacom put MGA's advertisements purchased through Beacon back on the air. | 20. Jackson Decl. Ex. 5 (Halliley Depo. at 243:14-243:23; 286:3-286:10). |

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

| | |
|---|---|
| 21. Paul Caldera of Beacon testified that, "For Viacom networks and for Nickelodeon, or the Nick networks, [Beacon was] not buying time in a specific show" or "a specific day." | 21. Jackson Decl. Ex. 4 (Caldera Depo. at 35:10-36:1). |
| 22. MGA purchased "gross ratings points" or "GRPs" for a particular week. | 22. Jackson Decl. Ex. 4 (Caldera Depo. at 33:14-36:1). |
| 23. The "GRP" entitled an advertiser to have its advertisements viewed by a certain number of viewers. | 23. Jackson Decl. Ex. 4 (Caldera Depo. at 33:14-36:1); Halliley Decl. ¶ 6. |
| 24. Paul Caldera of Beacon testified that he believed "Viacom, in fact, aired all of the ads during the week that included November 2nd and November 3rd that were purchased" on behalf of MGA. | 24. Jackson Decl. Ex. 4 (Caldera Depo. at 185:9-186:18); *id.* Ex. 5 (Halliley Depo. at 140:16-141:18). |
| 25. A written deal letter between Beacon and Viacom provided that Beacon's purchases on behalf of its clients were "100% Firm and non-cancellable." | 25. Halliley Decl., Ex. A. |
| 26. Paul Caldera, a Beacon employee, testified that "once ordered, [the order is] noncancellable," and "anything that's ordered is | 26. Jackson Decl. Ex. 4 (Caldera Depo. at 29:18-30:19; 31:14-18; 54:25-55:3). |

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

| | |
|---|---|
| noncancellable.  As long as -- when it's ordered, you can't cancel it." | |
| 27. By "noncancellable," Beacon meant that Viacom was under no obligation to release MGA from an obligation to pay for the advertisements, once purchased. | 27. Jackson Decl. Ex. 12 (Deposition of Sheldon Hirsch "Hirsch Depo.") at 51:16-51:22); *id.* Exs. 13 - 15. |
| 28. On November 3, 2015, MGA informed Viacom that it wished to "no longer TV advertise Bratz on Nick for the rest of the year." | 28. Jackson Decl. Ex. 10. |
| 29. On November 4, 2015, MGA told Beacon that it wanted to "[c]ancel all remaining media" for another product line, "Lala Dance w/Me." | 29. Jackson Decl. Ex. 16. |
| 30. On November 4, 2015, MGA informed Beacon that advertising for product lines other than Bratz and "Lala Dance w/Me" should stay on the air. | 30. Jackson Decl. Ex. 16. |
| 31. On November 10, 2015, Justin Halliley of Viacom sent an email to Isaac Larian of MGA stating "the MGA media buy is non-cancellable." | 31. Jackson Decl. Ex. 17. |

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

PLAINTIFF VIACOM INTERNATIONAL INC.'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSION OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| 32. Viacom continued to run advertising for MGA's "Bratz" product line through November 23, 2015. | 32. Jackson Decl. Ex. 5 (Halliley Depo. at 288:5-288:14; 290:18-290:21). |
| 33. After November 20, 2015, Viacom attempted to "sell off" about $380,000 of MGA's advertising purchased for the "Bratz" and "Lalaloopsy Dance With Me" toy lines by putting into a "pool" for sellable advertising. | 33. Jackson Decl. Ex. 5 (Halliley Depo. at 28:10-31:6) |
| 34. MGA has not paid for advertising purchased through Beacon that Viacom aired for MGA's products in November 2015. | 34. Whelan Decl. ¶ 11. |
| 35. MGA has not paid for advertising that Viacom aired for MGA's products in December 2015. | 35. Whelan Decl. ¶ 12. |
| 36. On December 7, 2015, Isaac Larian of MGA asked Paul Caldera of Beacon to tabulate the amounts of money that MGA owed to Viacom for advertising, including the amount Viacom "Viacom claim[ed] we owe them that we cancelled." | 36. Jackson Decl. Ex. 13. |

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

| | |
|---|---|
| 37. On December 7, 2015, Paul Caldera responded to Isaac Larian that the "Total Viacom remaining from Sept – Dec (*excluding sell-off/cancel*) is $6,566,883.25 net." | 37. Jackson Decl. Ex. 13. |
| 38. On December 8, 2015, Paul Caldera informed Isaac Larian that the "net amount owed is $7,768,065 that was authorized and ran, per the [purchase orders] sent to us." | 38. Jackson Decl. Ex. 13. |
| 39. According to Viacom's calculations based on the media plans agreed to between Beacon and Viacom, the total amount owed for advertising purchased through Beacon on MGA's behalf, and which Viacom actually ran is $7,378,420.75. | 39. Supplemental Declaration of Alexandra Whelan in Support of Summary Judgment ("Whelan Supp. Decl.") ¶¶ 1-8. |
| 40. The invoices provided to Beacon and MGA for Beacon-purchased advertising run by Viacom between September and December 2015 show an essentially identical amount owed by MGA for advertising actually run, or $7,378,423.25. This amount | 40. Whelan Decl. ¶¶ 9-12 & Exs. J-M. |

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

PLAINTIFF VIACOM INTERNATIONAL INC.'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| reflects only advertising actually run by Viacom. | |
| 41. MGA has not paid for Beacon-purchased advertising actually run by Viacom on the Nickelodeon Networks between September and December 2015. | 41. Whelan Decl. ¶¶ 9-12. |

### UNCONTROVERTED FACTS RE: CLAIM 3

### (Unpaid Advertising Purchased Through Haworth)

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 42. In two letters dated May 13, 2015, MGA indicated that Haworth Media + Marketing ("Haworth") was authorized to represent MGA and its "Bratz" and "Little Tikes" brands and place media on MGA's behalf for these brands approved in writing by MGA. | 42. Jackson Decl. Exs. 18 - 19; *id.* Ex. 20 (Deposition of Heather Kruse ("Kruse Depo.") at 37:19-47:7). |
| 43. The two letters indicated that MGA remained responsible for the advertising purchased by Haworth. | 43. Jackson Decl. Ex. 18 - 19; *id.* Ex. 20 (Kruse Depo. at 37:19-47:7). |
| 44. MGA signed a "schedule and estimate" dated June 30, 2015, authorizing Haworth to purchase advertising on its behalf for its "Bratz" line of products, including | 44. Jackson Decl. Ex. 21; *id.* Ex. 20 (Kruse Depo. at 47:20-50:22). |

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

PLAINTIFF VIACOM INTERNATIONAL INC.'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSION OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| purchases on networks operated by Viacom. This document indicated that the purchase was "firm," which according to Haworth's representative meant that the advertising was non-cancellable. | |
| 45.On July 21, 2015, Haworth and Viacom confirmed their agreement to a "3Q15-4Q15" "scatter" order for the placement of advertising for MGA's "Bratz" line on the Nickelodeon Networks (Nickelodeon, Nick@Nite, and Teen Nick).  This order indicated that the advertising ordered was "100% Firm and non-cancellable," and Haworth's representative testified that this meant that the order made on MGA's behalf could not be cancelled. | 45.Jackson Decl. Ex. 22; *id.* Ex. 20 (Kruse Deposition at 51:1-53:17). |
| 46.Between July 27 and August 17, 2015, Haworth-purchased Bratz advertising ran on the Nickelodeon Networks. | 46.Jackson Decl. Ex. 23 - 25; *id.* Ex. 20 (Kruse Deposition at 56:4-61:17). |
| 47.MGA moved the Bratz account to Beacon after August 17, 2015, but | 47.Jackson Decl. Ex. 20 (Kruse Depo. at 53:25-56:3). |

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

PLAINTIFF VIACOM INTERNATIONAL INC.'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSION OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| Haworth retained MGA's authorization to purchase advertising for the toy line known as "Little Tikes." | |
| 48. MGA signed a "schedule and estimate" dated August 12, 2015, authorizing Haworth to purchase advertising on its behalf for its "Little Tikes" line of products, including purchases on cable networks such as those operated by Viacom. This document indicated that the purchase was "firm," which according to Haworth's representative meant that the advertising was non-cancellable. | 48. Jackson Decl. Exs. 26 & 27; *id.* Ex. 20 (Kruse Depo. at 62:3-66:9; 200:21-203:5). |
| 49. On October 12, 2015, Haworth and Viacom confirmed their existing agreement to a "4Q15" "scatter" order for the placement of advertising for MGA's "Little Tikes" line on the Nickelodeon Networks (Nick@Nite).  This order indicated that the advertising ordered was "100% Firm and non-cancellable," and Haworth's | 49. Jackson Decl. Ex. 28; *id.* Ex. 20 (Kruse Depo. 66:10-67:24). |

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

PLAINTIFF VIACOM INTERNATIONAL INC.'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSION OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| representative testified that this meant that the order made on MGA's behalf could not be cancelled. | |
| 50. Haworth-purchased Little Tikes advertising ran on the Nickelodeon Networks between September 29, 2015 and November 22, 2015. | 50. Jackson Decl. Exs. 29 - 30; *id.* Ex. 20 (Kruse Depo. at 68:1-72:3). |
| 51. MGA instructed Haworth to attempt to cancel the Little Tikes advertising it had purchased for November, commencing in the week of November 9, 2015. | 51. Jackson Decl. Ex. 31; *id.* Ex. 20 (Kruse Depo. 72:16-77:21). |
| 52. Viacom did not "sell off" this non-cancellable advertising, and continued to run some Haworth-purchased advertising until November 22, 2015. | 52. Jackson Decl. Ex. 32; *id.* Ex. 20 (Kruse Depo. 79:7-85:8). |
| 53. In total, Viacom ran at least $788,964 worth of Haworth-purchased advertising between July 27, 2015 and November 22, 2015 (and $711,653 if only advertising between July 27, 2015 and November 9, 2015 is included). | 53. Jackson Decl. Exs. 23 - 25; *id.* Exs. 29 - 39; *id.* Ex. 20 (Kruse Depo. 56:4-61:17, 68:1-72:3); Jackson Decl. ¶ 41. |

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

281722.2
12
Case No. 2:15-CV-09621-R (Ex)
PLAINTIFF VIACOM INTERNATIONAL INC.'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## UNCONTROVERTED FACTS RE: CLAIM 1 AND MGA

## COUNTERCLAIMS (Breach Of Co-Financing Agreement

## For *Lalaloopsy* Television Series)

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 54. MGA has a brand of dolls called "Lalaloopsy." | 54. Declaration of Sujata Luther ("Luther Decl.") ¶ 3. |
| 55. In 2012, MGA and Viacom "commit[ted] to co-finance a 2D flash animated series consisting of a minimum of 52 half-hour episodes based on [Lalaloopsy]." | 55. Declaration of Sarah Levy ("Levy Decl.") ¶ 13, Ex. B ¶2(a). |
| 56. Viacom contributed more than $5.2 million towards financing the program. | 56. MGA Answer to Second Amended Complaint (Dkt. # 23) at ¶ 16, |
| 57. MGA created and developed the Lalaloopsy Program in conjunction with Moonscoop. | 57. Levy Decl. ¶ 6, Ex. A; *id.* ¶ 13, Ex. B ¶2(b). |
| 58. "[Viacom] retain[ed] 100% of ad sales and all other revenue (e.g., without limitation, subscriber fees, affiliate fees and revenues, etc.) from exhibition and/or distribution of the [Lalaloopsy Program]" | 58. Levy Decl. ¶ 13, Ex. B ¶ 7(a). |
| 59. The Co-Financing Agreement provides that "MGA hereby agrees to pay VMN the following minimum guarantees in the | 59. Levy Decl. ¶ 13, Ex. B ¶ 7(d). |

281722.2

13

Case No. 2:15-CV-09621-R (Ex)

PLAINTIFF VIACOM INTERNATIONAL INC.'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSION OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

| | |
|---|---|
| amount of $2 million, $3 million and $4 million in Year 1, Year 2 and Year 3 of the Programming Commitment respectively totaling $9 million for said years." | |
| 60. Pursuant to paragraph 7(d) of the Co-Finance Agreement, MGA was required to make the final $4 million minimum guarantee payment to Viacom no later than September 15, 2015. | 60. Levy Decl. ¶ 13; *see also id.* at Ex. B ¶ 7(d). |
| 61. MGA has only paid $500,000 toward this obligation [the third $4 million minimum guarantee] to date, and has failed to pay the remaining $3.5 million. | 61. Levy Decl. ¶ 13 |
| 62. Nickelodeon and Nick Jr. are two channels that are operated through Viacom International Inc. | 62. Levy Decl. ¶ 2. |
| 63. Nickelodeon targets children aged 2-11. | 63. Levy Decl. ¶ 2. |
| 64. Nick Jr., by contrast, targets preschool children exclusively. | 64. Levy Decl. ¶ 2; Dkt. No. 13 (MGA Counterclaim at ¶ 14). |
| 65. Nickelodeon has a "block" of preschool programming as well, which is sometimes referred to as the "Nickelodeon Preschool | 65. Levy Decl. ¶ 2. |

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

| | |
|---|---|
| Block" or as "Nick Jr." During the school year, programs that are part of the Nickelodeon Preschool Block are broadcast during the week between about 8:30 a.m. and 2 p.m. | |
| 66. The Co-Financing Agreement states: "[Viacom] hereby commits to launch the series on the main Nickelodeon channel (such launch plan to be developed in meaningful consultation with MGA) and thereafter broadcast the Programming on either the main Nickelodeon channel or the Nick Jr. channel on a regularly scheduled basis during the hours 8 a.m. to 9 p.m. for three years (subject to customary resting periods, which shall not be longer than three consecutive months)." | 66. Levy Decl. ¶ 13, Ex. B ¶ 5. |
| 67. Casey Collins, a MGA employee, sent Viacom a term sheet proposing that the Lalaloopsy series would launch on Nickelodeon and then air on | 67.  Luther Decl. ¶ 5; Jackson Decl. Exs. 33 & 34. |

PLAINTIFF VIACOM INTERNATIONAL INC.'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSION OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| Nickelodeon on a regularly scheduled basis for three years. | |
| 68. Viacom rejected MGA's proposal that the Lalaloopsy series would launch on Nickelodeon and then air on Nickelodeon on a regularly scheduled basis for three years. | 68. Luther Decl. ¶ 5 |
| 69.  MGA agreed that the Lalaloopsy series would launch on Nickelodeon, and then, depending on how it performed, would either stay on Nickelodeon or move to Nick Jr. | 69. Luther Decl. ¶ 6; *id.* Ex. B. |
| 70. MGA's May 23, 2015 term sheet states that the program may "[a]ir on Nick or Nick Jr…for 3 years." | 70. Luther Decl. ¶ 6; *id.* Ex. B. |
| 71. MGA never again submitted a draft of the Co-Financing Agreement stating that Viacom could not broadcast the program on Nick Jr. | 71. Jackson Decl. Ex. 35; Levy Decl. ¶ 13, Ex. B ¶ 5; Luther Decl. Ex. C. |
| 72. Every draft of the Co-Financing Agreement states that Viacom would launch the Lalaloopsy series on Nickelodeon and thereafter broadcast the series on either Nickelodeon or Nick Jr. | 72. Jackson Decl. Ex. 35; Levy Decl. ¶ 13, Ex. B ¶ 5. |

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

| | |
|---|---|
| 73. On July 30, 2012, Jeanine Pisoni at MGA sent changes marked in redline to the Co-Financing Agreement to Jamie Drew and Anne Donovan at Viacom. | 73. Jackson Decl. Ex. 36. |
| 74. The July 30, 2012 draft of the Co-Financing Agreement sent by Ms. Pisoni contains the following language added by Ms. Pisoni: "The parties expressly agree that the time period will be a favorable time period for the targeted audience of girls between ages 4 to 7, and will be "sandwiched" between a strong lead-in and a strong lead-out." | 74. Jackson Decl. Ex. 36; Luther Decl. ¶ 8. |
| 75. The July 30, 2012 redline sent by Ms. Pisoni also contains the following language, with Ms. Pisoni's redline inserts in italics: "[Viacom] commits to a launch plan on the main Nickelodeon channel…and thereafter broadcast the programming on *either* the main Nickeldoeon *or the Nick Jr. network* on a regularly scheduled *and continuous* basis…" | 75. Jackson Decl. Ex. 36. |

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

| | |
|---|---|
| 76. Ms. Levy responded to MGA's July 30, 2012 redlined draft on August 1, 2012, and stated: "As broadcasters, retaining complete control over all scheduling decisions is imperative to our core business of maximizing ratings. This is an absolute for us . . . .[W]e have already agreed to air the show on a regularly scheduled basis and we are willing to further agree to air the show between 8A and 9P, which are the hours when kids watch the most TV. We cannot offer any further compromise on this point as lead-ins and lead-outs, etc need to remain our decision as a network." | 76. Luther Decl. ¶ 8, Ex. D. |
| 77. MGA's negotiator accepted the position in Ms. Levy's August 1, 2012 letter and "thereafter MGA no longer sought to impose the conditions on programming that had appeared in drafts exchanged prior to August 1, 2012." | 77. Luther Decl. ¶ 9. |
| 78. Viacom developed a "launch plan." | 78. Luther Decl. ¶ 11, Ex. F. |

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

281722.2

18

Case No. 2:15-CV-09621-R (Ex)
PLAINTIFF VIACOM INTERNATIONAL INC.'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| 79. The launch plan states that the series would launch on Friday, March 29, 2013, followed by four weeks of premieres and encores on Nickelodeon. | 79. Luther Decl. ¶ 11, Ex. F. |
| 80. The launch plan does not mention airing any episodes on Nickelodeon after the week of May 27, 2013. | 80. Luther Decl. ¶ 11, Ex. F. |
| 81. On March 6, 2013, Viacom and MGA discussed the "launch plan" and Ms. Luther endorsed the plan on behalf of MGA. | 81. Luther Decl. ¶ 11. |
| 82. The Lalaloopsy program debuted on the main Nickelodeon channel on March 29, 2013, and was shown in the Nickelodeon preschool "block." | 82. Levy Decl. ¶ 7. |
| 83. Viacom premiered 12 episodes on Nickelodeon. | 83. Levy Decl. ¶ 7. |
| 84. After the premieres of the first 12 episodes, on June 17, 2013, Viacom transferred the Lalaloopsy program to Nick Jr. | 84. Levy Decl. ¶ 8. |
| 85. While on Nickelodeon the Lalaloopsy program was aired at least once per week, and in some | 85. Declaration of Jennifer Jankowski ("Jankowski Decl.") Ex. A |

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

| | |
|---|---|
| weeks on every weekday, between 8 a.m. and 9 p.m.. | |
| 86. After the Lalaloopsy program was moved to Nick Jr, and through and beyond the three year period, the Program was always aired at least once per week between 8 a.m. to 9 p.m., and generally aired five to seven days per week. | 86. Jankowski Decl. Ex. A |
| 87. Over three years, Viacom broadcast every single episode (52 episodes in all) of the Lalaloopsy program. | 87. Levy Decl. ¶ 10; Jankowski Decl. Ex. A |
| 88. Viacom has broadcast episodes of the Lalaloopsy program more than 1,700 times. | 88. Levy Decl. ¶ 10; Jankowski Decl. Ex. A |
| 89. The Co-Financing Agreement states that "[e]ach Party will have non-exclusive customary advertising and promotional rights in the [Lalaloopsy Program], the Property and the Additional Production in all languages, in all media, on any platform (including third party platforms) worldwide…" | 89. Levy Decl. ¶ 13, Ex. B ¶ 8. |

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

20

PLAINTIFF VIACOM INTERNATIONAL INC.'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| 90. The Co-Financing Agreement does not describe any specific promotional or marketing obligations for Viacom. | 90. Levy Decl. ¶ 13, Ex. B ¶ 8. |
| 91. Viacom assigned its EVP of Preschool Production and Development, Teri Weiss, as the lead creative executive for the Lalaloopsy program. | 91. Levy Decl. ¶ 6, Ex. A. |
| 92. In April 2012, Ms. Weiss met with MGA representatives and with Moonscoop to discuss the creative direction for the show. | 92. Levy Decl. ¶ 6, Ex. A. |
| 93. Viacom told MGA that Ms. Weiss would be the primary creative contact. | 93. Jackson Decl. Ex. 37. |
| 94. The "launch plan" for the Program, approved by MGA, expressly stated that the series was aimed at preschoolers. | 94. Luther Decl. ¶ 11, Ex. F. |
| 95. On February 11, 2013, MGA issued a press release titled: "MGA ENTERTAINMENT AND NICKELODEON JOIN TO LAUNCH LALALOOPSY™, NEW ANIMATED PRESCHOOL | 95. Luther Decl. ¶ 10, Ex. E. |

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

281722.2

21

Case No. 2:15-CV-09621-R (Ex)
PLAINTIFF VIACOM INTERNATIONAL INC.'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSION OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| SERIES SET TO PREMIERE SPRING 2013." | |
|---|---|
| 96. MGA's expert, in reports submitted in this action, analyzed damage purportedly caused by the Program's move in 2013 from the main Nickelodeon channel to the Nick Jr channel. The expert asserted that this damage was caused by "[a]ging down the Lalaloopsy brand," i.e. associating the "brand" of the Lalaloopsy doll with a preschool audience. | 96. Jackson Decl. Exs. 38 & 39. |

## CONCLUSIONS OF LAW

1.    Under California law, "[t]o prevail on a cause of action for breach of contract, the plaintiff must prove (1) the contract, (2) plaintiff's performance … (3) defendant's breach, and (4) resulting damage to the plaintiff." *Richman v. Hartley*, 224 Cal.App.4th 1182, 1186 (2014).

2.     A party is entitled to suspend its performance when another party has demonstrated that it is insolvent or otherwise unwilling to provide consideration. 1 Witkin, Summary 10th (2005) Contracts § 816, p. 907 (noting that a party is entitled to suspend performance when it "appears that the performance will not take place" for reasons including inability or unwillingness to pay); *Bliss v. California Cooperative Producers* 30 Cal.2d 240, 248, 250 (1947) (same).

3.    A breach by a plaintiff must be "material" to excuse a defendants' failure to perform. *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1529-30 (9th Cir. 1993), *rev'd on other grounds* 510 U.S. 517 (1994).

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

4.    Only a "material" or "total" breach of contract excuses performance by the other party. *See* 1 Witkin, Summary 10th (2005) Contracts, § 852, p. 938  ("a slight breach that does not go "to the root" of the contract will not justify termination").

5.    A defendant (here, MGA) has the burden of proving that a plaintiff (here, Viacom) improperly failed to mitigate damages.  CACI 3931; *Carnation Co. v. Olivet Egg Ranch*, 189 Cal.App.3d 809, 818 (1986) (so holding in a contract case).

6.    The duty to mitigate does not arise when a party seeks to enforce an express term of a contract. *See Peoplesoft U.S.A., Inc. v. Softeck, Inc.*, 227 F. Supp. 2d 1116, 1121 (N.D. Cal. 2002).

7.    "Repudiation" of a contract must be unequivocal to trigger the non-breaching party's obligation to mitigate. *Inamed Corp. v. Kuzmak*, 275 F. Supp. 2d 1100, 1132 (C.D. Cal. 2002).

8.    Under California law, the Court must consider the language of a written contract in light of the terms of the contract and the extrinsic evidence, to see if contract language is ambiguous. *Wolf v. Walt Disney Pictures & Television*, 162 Cal.App.4th 1107, 1126 (2008).  If, in light of the extrinsic evidence, there is no ambiguity, or if "there is no material conflict in the extrinsic evidence," the Court interprets the contract as a matter of law. *Id.*

9.    The implied covenant of good faith and fair dealing cannot prohibit a party from taking an action expressly permitted by the contract; "the implied covenant will only be recognized to further the contract's purpose; it will not be read into a contract to prohibit a party from doing that which  is expressly permitted by the agreement itself." *Roth v. Madison Nat. Life Ins. Co.*, 702 F. Supp. 2d 1174, 1178-79 (C.D. Cal. 2010)  (quoting *Wolf* , 162 Cal.App.4th at 1122);  *see also Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal.4th 342, 374 (1992) ("We are aware of no reported case in which a court has held the covenant of

PLAINTIFF VIACOM INTERNATIONAL INC.'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSION OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1 good faith may be read to prohibit a party from doing that which is expressly

2 permitted by an agreement.").

3     10.    "[C]ourts are not at liberty to imply a covenant directly at odds with a

4 contract's express grant of discretionary power except in those relatively rare

5 instances when reading the provision literally would, contrary to the parties' clear

6 intention, result in an unenforceable, illusory agreement." *Storek & Storek, Inc. v.*

7 *Citicorp Real Estate, Inc.*, 100 Cal.App.4th 44, 59 (2002); *Third Story Music, Inc. v.*

8 *Waits,* 41 Cal.App.4th 798, 808 (1995).

9     11.    The implied covenant of good faith and fair dealing cannot be used to

10 add terms to a contract. *See Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 349-50 (2000)

11

12 DATED:  June 20, 2016        KENDALL BRILL & KELLY LLP

13

14

15                     By:      /s/ Richard B. Kendall

16                         Richard B. Kendall
                        Attorneys for Plaintiff and

17                         Counterdefendant Viacom International

18                         Inc.

19

20

21

22

23

24

25

26

27

28

**Kendall Brill & Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

281722.2              24           Case No. 2:15-CV-09621-R (Ex)
PLAINTIFF VIACOM INTERNATIONAL INC.'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS
AND CONCLUSION OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT