NO JS-6

O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIACOM INTERNATIONAL INC., a Delaware corporation,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>MGA ENTERTAINMENT, INC., a California corporation,<br><br>　　　　　　　　Defendant. | CASE NO. CV 15-9621-R<br><br>ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

　　　Before the Court are Plaintiff and Counterdefendant Viacom International Inc. ("Viacom") and Defendant and Counterclaimant MGA Entertainment, Inc.'s ("MGA") Cross-Motions for Partial Summary Judgment. (Dkt. Nos. 29, 52). After full briefing by the parties, this Court took the matter under submission on July 12, 2016.

　　　Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). To meet its burden of production, "the moving party must either produce evidence negating an essential element of the non-moving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate

burden of persuasion at trial." *Nissan Fire & Marine Ins. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party meets its initial burden of showing there is no genuine issue of material fact, the opposing party has the burden of producing competent evidence and cannot rely on mere allegations or denials in the pleadings. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Id.*

Both Viacom and MGA move for summary judgment on Viacom's second claim for relief against MGA for breach of contract. Additionally, Viacom moves for summary judgment on two other claims for breach of contract against MGA, as well as summary judgment on MGA's two counterclaims against Viacom.

Viacom's second claim for relief against MGA is for breach of contract pertaining to the Beacon Domestic Ad Sales Agreement ("Viacom/Beacon Agreement"). A plaintiff who claims breach of contract must establish all of the following: (1) the existence of a contract; (2) the performance by plaintiff of its obligation under the contract; (3) the breach of contract by defendant; and (4) damages as a result of defendant's breach of contract. *See* 4 Witkin, California Procedure (4th Edition), Pleading § 476, p. 570. The undisputed evidence demonstrates that Beacon entered into a contract with Viacom, Viacom performed its obligation under that contract, neither Beacon nor MGA paid Viacom for its performance, and Viacom suffered damages as a result. Although MGA is not a signatory to the Viacom/Beacon Agreement, Viacom argues Beacon acted as MGA's agent.

An agent is one who represents another, called the principal, in dealings with third persons. Cal. Civ. Proc. Code § 2295. An agent has authority that his principal *actually* or *ostensibly* confers upon him and represents his principal for all purposes within the scope of his *actual* or *ostensible* authority. Cal. Civ. Proc. Code §§ 2298, 2330. When "acting within his actual or ostensible authority, [an agent] binds the principal where the principal has intentionally or negligently allowed others to believe the agent has authority." *C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 479 (9th Cir. 2000). Therefore, in order for MGA to be liable for breach of the Viacom/Beacon Agreement, Viacom bears the burden of establishing that

Beacon had actual or ostensible authority to contract on MGA's behalf. *See Inglewood Teachers Ass'n v. Pub. Emp't Relations Bd.*, 227 Cal. App. 3d 767, 780 (1991) (stating that the burden of proving authority "rests upon the party asserting the existence of the agency and seeking to charge the principal with the representation of the agent").

Actual authority is that which "a principal intentionally confers upon the agent, or intentionally, or by want of ordinary care, allows the agent to believe himself to possess." Cal. Civ. Proc. Code § 2316. Here, the evidence establishes that MGA intentionally conferred upon Beacon the authority to bind MGA to the Viacom/Beacon Agreement. In a 2006 letter from MGA to Beacon, MGA acknowledges that Beacon is MGA's agency of record and notes that MGA guarantees payment for all authorized orders placed by Beacon. While MGA argues that there is no evidence that Viacom ever reviewed this letter prior to the instant litigation, a third party's knowledge of actual authority is not required. *See generally* Cal. Civ. Proc. Code § 2316; *Inglewood Teachers Ass'n*, 227 Cal. App. 3d at 781. Moreover, in 2015, MGA's General Counsel, Ellie Trope, circulated another letter stating that Beacon is MGA's agency of record for authorized orders. Trope Dec. Ex. A. Therefore, it is clear that MGA intended for Beacon to be its agent.

Alternatively, MGA argues that even if Beacon was its agent, it was only authorized to bind MGA to *previously approved* transactions, and the Viacom/Beacon Agreement was not previously approved. However, the evidence shows that Beacon prepared, and MGA approved, specific "authorizations for media placement." These authorizations describe orders made by MGA for the purchases that Beacon was to make on MGA's behalf during the June through December 2015 time period covered by the Viacom/Beacon Agreement. Dkt. 53, Exs. 7-9. Email correspondence from June 26, 2015 between MGA Global Sales and Licensing Assistant, Margot Lopez, and Beacon representatives establish that MGA specifically authorized the placement orders of advertising for MGA shows including Lalaloopsy, MC2, and Little Tikes on Viacom channels. *Id*. MGA does not, and cannot, dispute that it sent those emails to Beacon authorizing the advertising placement orders.

Additionally, all of this is compounded by the fact that MGA actually paid for Beacon-purchased advertising, and did so through 2015—including the commissions associated with the

3

1  Viacom/Beacon Agreement. Dkt. 38-4, Ex. 4 at 88:17-89:8. Since MGA does not dispute that it
2  paid Beacon commissions for the Viacom/Beacon Agreement, this Court is left with no other
3  explanation other than the fact that Beacon had actual authority to enter into the Viacom/Beacon
4  Agreement.

5  In addition to succeeding on its claim because Beacon had *actual* authority, Viacom
6  alternatively succeeds since Beacon had *ostensible* authority. "An agency is ostensible when the
7  principal intentionally, or by want of ordinary care, causes a third person to believe another to be
8  his agent who is not really employed by him." Cal. Civ. Code § § 2300, 2317. A showing of
9  ostensible authority requires three elements: (1) the principal intentionally or carelessly created the
10 impression of authority; (2) a third party reasonably believed that the ostensible agent had that
11 authority; and (3) that third party was harmed because it reasonably relied on its belief. *See* CACI
12 No. 3709; Cal. Civ. Code § § 2300, 2317. A principal need not "make explicit representations
13 regarding the agent's authority to the third party before ostensible authority can be found," *C.A.R.*
14 *Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc*., 213 F.3d 474, 480 (9th Cir. 2000).
15 Instead, "ostensible authority may be proven through evidence of the principal transacting
16 business solely through the agent, the principal knowing that the agent holds himself out as
17 clothed with certain authority but remaining silent, the principal's representations to the public in
18 general, and the customs and usages of the particular trade in question." *Id*.

19 Here, evidence shows MGA intentionally, or at least carelessly, caused third-party Viacom
20 to believe that Beacon had authority to purchase advertising on MGA's behalf. Although explicit
21 representations are not required to demonstrate ostensible authority, Justin Halliley, Vice President
22 of Sales & Marketing for Nickelodeon (a Viacom entity), stated in his declaration that "Beacon's
23 status as MGA's agent, and its authorization to purchase advertising on MGA's behalf, ha[d] been
24 confirmed to [him] by both MGA and Beacon many times over the years in the form of written
25 correspondence and verbal statements made at in-person meetings." Halliley Decl. ¶ 4.
26 Furthermore, MGA transacted all of its business with Viacom through Beacon for years,
27 throughout which, Halliley states, "MGA never once suggested that Beacon lacked authority to
28 purchase advertising for MGA." *Id.* Moreover, the customs of this particular trade recognize an

4

advertising agent's right to bind the principal to contracts with third parties like Viacom. *See, e.g.*, *R. H. Macy & Co. v. Robinson*, 183 Cal. App. 2d 182, 188-90 (1960) (contract entered into by advertising agency enforceable against principal); *Store of Happiness v. Carmona & Allen, Inc.*, 152 Cal. App. 2d 266, 271-72 (1957) (advertising agency contracted for enforceable advertisements with a third-party television station).

Additionally, the parties' past dealings would lead a reasonable person to believe that Beacon was acting on behalf of MGA. The record is undisputed that MGA has previously authorized Beacon to contract with Viacom for the purchase of advertising. When MGA's CEO, Isaac Larian, was asked in his deposition whether MGA had authorized Beacon to place television advertising with Viacom networks on MGA's behalf, he answered affirmatively. Dkt. 53, Ex. 2. at 75:23-76:4. Accordingly, Viacom representatives reasonably believed that Beacon was an authorized agent of MGA. Moreover, Viacom's assumptions were reinforced by the fact that MGA had always paid for the millions of dollars in yearly advertising that Beacon placed on its behalf. Halliley Decl. ¶ 4. If this does not demonstrate a clear intent to cause third-party Viacom to believe that Beacon had authority to purchase advertising on MGA's behalf, at the very least, MGA's carelessness undoubtedly created the impression of Beacon's authority.

Finally, Viacom meets the third element of ostensible authority since it relied on its reasonable belief that Beacon was authorized to act on MGA's behalf to its detriment. Because of MGA's express representations to Viacom, MGA's previous acknowledgment of Beacon's authority, and the parties' past dealings, Viacom aired over $7,348,423.00 worth of advertisements in 2015 pursuant to the Viacom/Beacon Agreement. Therefore, there is no genuine issue of material fact as to whether Beacon had actual, or at the very least, ostensible authority to bind MGA to the Viacom/Beacon Agreement.

The Viacom/Beacon Agreement was a valid contract. Viacom performed its obligation under it, MGA failed to pay, and Viacom was damaged as a result. Therefore, MGA breached the Viacom/Beacon Agreement. Accordingly, Viacom is entitled to summary judgment on its second claim for relief. The parties are directed to file additional briefing as to the amount owed by Defendant MGA under the Viacom/Beacon Agreement.

Viacom's third claim for relief against MGA is for breach of contract pertaining to the Haworth Domestic Ad Sales Agreement ("Haworth Agreement"). Unlike the dispute over Beacon's authority, MGA concedes that Haworth was in fact retained by MGA to purchase advertising on its behalf. With MGA's authorization, Haworth entered into an agreement with Viacom in mid-2015 to purchase advertising for the "Bratz" toy on Viacom's network. On August 17, 2015, MGA terminated its agreement with Haworth and transferred the Bratz advertisements, initially placed by Haworth, to Beacon. However, Haworth retained MGA's authorization to purchase advertising for another toy line, "Little Tikes." Haworth purchased advertising for Little Tikes from Viacom for September through November 2015. Viacom alleges, and MGA does not dispute, that MGA has failed to pay for either the Bratz or Little Tikes advertisements.

MGA does, however, haphazardly argue that after it terminated its agreement with Haworth, the lack of an agreement with Beacon (Haworth's successor) meant that there was no valid contract for advertisements after August 2015. This argument misrepresents the facts. First, as to the Bratz advertisements, which were subsequently transferred to Beacon, Viacom is only seeking to recover its contractual payments from advertisements **predating** August 17, 2015. There is no dispute that MGA authorized Haworth to purchase advertising for its Bratz toy line prior to August 2015. Moreover, there is no dispute that these advertisements ran on Viacom networks between July 27 and August 17, 2015.

Under the same Haworth Agreement, Viacom also seeks payment for advertisements purchased for MGA's Little Tikes brand. Those advertisements ran between September 29 and November 22, 2015. Viacom alleges, and MGA does not dispute, that this particular toy line was never transferred to Beacon. Instead, Haworth remained MGA's authorized agent for this brand as evidenced by email correspondence from MGA's Global Sales and Licensing Assistant, Margot Lopez. In an email dated September 1, 2015 (after Haworth's termination as agent for the Bratz line) Ms. Lopez explicitly authorizes Little Tikes advertising placed by Haworth. Dkt. 52-4, Ex. 26. Accordingly, Viacom performed its obligation under this final portion of the Haworth Agreement, MGA failed to pay, and Viacom was damaged as a result. The Court finds MGA breached the Haworth Agreement and orders the parties to file additional briefing as to the amount

6

owed by Defendant MGA.

Finally, Viacom moves for summary judgment on its first claim for breach of the Co-Financing Agreement ("Co-Fi Agreement"). Under the Co-Fi Agreement, Viacom and MGA agreed to share the costs of producing a television series based on MGA's "Lalaloopsy" toy line. Viacom contributed more than $5.2 million toward financing the program and in return, the Co-Fi Agreement entitled Viacom to receive minimum guarantee payments from MGA. *See* Dkt. 13, at 3:5. Pursuant to paragraph 7(d) of the Co-Fi Agreement, MGA was required to make a final $4 million minimum guarantee payment to Viacom no later than September 15, 2015. Dkt. 52-15, Ex. B ¶ 7(d). On November 23, 2015, MGA paid Viacom $500,000 towards its final minimum guarantee. Dkt. 13, at 3:10. Viacom's first claim for relief seeks the remaining balance of $3.5 million.

MGA has brought two counterclaims against Viacom arising out of the Co-Fi Agreement. First, MGA alleges that Viacom breached the express terms of the Co-Fi Agreement. Second, MGA alleges that Viacom breached the implied covenant of good faith and fair dealing. Viacom moves for summary judgment on both MGA's counterclaims. Because the disposition of MGA's counterclaims is dispositive of Viacom's first claim for relief against MGA, the Court will address MGA's counterclaims first.

MGA claims that Viacom breached two express terms under the Co-Fi Agreement. First, MGA alleges that Viacom failed to "launch" the Lalaloopsy series on Nickelodeon, and second, MGA alleges that Viacom failed to broadcast the Lalaloopsy series at "regularly scheduled" times. The Co-Fi Agreement states that Viacom will "launch the series on the main Nickelodeon channel (such launch plan to be developed in meaningful consultation with MGA) and thereafter broadcast the Programming on either the main Nickelodeon channel or the Nick Jr. channel . . . ." Dkt. 52-15, Ex. B ¶ 5. MGA contends that the "launch" provision meant "that all first run episodes of the series would air on Nickelodeon," as opposed to Nick Jr. However, this is nothing more than MGA's unexpressed subjective belief, which is irrelevant for contract interpretation. *See Cedars-Sinai Med. Cntr. V. Shewry*, 137 Cal. App. 4th 964, 980 (2006) ("parties' undisclosed intent or understanding is irrelevant to contract interpretation"). Nothing in the language of the contract

itself supports, or even suggests, MGA's interpretation. There is no evidence at all that MGA expressed its subjective interpretation to anyone at Viacom while the terms of the Co-Fi Agreement were being negotiated and drafted. To survive summary judgment, MGA must do more than argue a self-serving interpretation of a contract term—it must offer evidence raising an issue of fact as to contract interpretation. Otherwise, if there is no conflict in the extrinsic evidence, the court simply construes the contract as a matter of law. *Wolf v. Walt Disney Pictures & T.V.*, 162 Cal. App. 4th 1107, 1126 (2008). Additionally, MGA specifically admitted in its answer that it "admits that [the] Lalaloopsy series was launched on the main Nickelodeon channel in March of 2013." Dkt. 13 at ¶ 16. A statement in a party's answer is a binding judicial admission and cannot be controverted by that party. *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988). Accordingly, because Viacom launched the series on the main Nickelodeon channel and thereafter broadcasted the series on the Nick Jr. channel, which is exactly what the Co-Fi Agreement required it to do, Viacom is entitled to summary judgment as to this claim.

Viacom is also entitled to summary judgment on MGA's next claim that it failed to broadcast the Lalaloopsy series at "regularly scheduled" times. MGA claims that there is a triable issue of fact on the Co-Fi Agreement's requirement that the program be shown on a "regularly scheduled basis," as opposed to the scattered times Viacom actually aired the show. While MGA's argument as to the ambiguity of this contract term is stronger than the one above, Viacom correctly points out that MGA has offered no evidence demonstrating any causal link between Viacom's scheduling decisions and actual harm to MGA. *See Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305, 1352 (2009) (causation necessary element of claim for breach of contract). To prevail at trial, MGA must prove that it suffered damages as a result of the alleged breach. Because MGA cannot show harm from this purported breach, MGA's counterclaim for breach of express written contract, which requires MGA to prove resulting damage from a breach of the "regularly scheduled" provision, fails as a matter of law.

MGA's final counterclaim against Viacom is for breach of the implied covenant of good faith and fair dealing. MGA argues that Viacom's purported failure to "support" the Lalaloopsy television program breached the Co-Fi Agreement's implied covenant of good faith and fair

8

dealing. The implied covenant of good faith and fair dealing "exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made." *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 349-50 (2000). It does not impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement. *Id*. Viacom correctly argues that the Co-Fi Agreement contains no terms that impose on Viacom any promotional obligations. Accordingly, MGA was not deprived of any contractual benefit.

MGA also argues that Viacom put its own interests above MGA's and "devoted more resources to its [other shows] than to Lalaloopsy." Dkt. 71 at 9, 22. But again, nothing in the Co-Fi Agreement required Viacom to treat Lalaloopsy exactly as it did other Viacom shows. And even if there were an implied obligation to promote Lalaloopsy, the record thoroughly establishes that Viacom broadcasted promotional advertising, launched an online campaign for the program, broadcasted "specials" related to the series and devoted a dedicated segment of its website to the program. Dkt. 52-13 at ¶¶ 9-13. Therefore, even when viewed in the light most favorable to MGA, there is no genuine issue of material fact as to whether Viacom breached the implied covenant of good faith and fair dealing. The overwhelming evidence establishes that Viacom substantially performed its obligations under the Co-Fi Agreement, and thus, MGA was unentitled to withhold its $3.5 million minimum-payment guarantee.

Viacom and MGA had a valid contract. Viacom performed its obligation under it, MGA failed to pay, and Viacom was damaged as a result. Therefore, MGA breached the Co-Fi Agreement. Accordingly, Viacom is entitled to summary judgment on its first claim for relief. The parties are directed to file additional briefing as to the amount owed by Defendant MGA under the Co-Fi Agreement.

/ / / / / / /
/ / / / / / /
/ / / / / / /
/ / / / / / /
/ / / / / / /

1    **IT IS HEREBY ORDERED** that Defendant's Partial Motion for Summary Judgment on

2    Viacom's Second Claim for Relief is DENIED.  (Dkt. No. 29).

3    **IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment is

4    GRANTED. (Dkt. No. 52).

5    Dated: July 18, 2016.

_____

MANUEL L. REAL
UNITED STATES DISTRICT JUDGE